## No. 11,732.

LEOPOLD M. LAYMAN VS. MRS. VICTORIA VICKNAIR, WIFE OF FELIX LASSEIGNE, ET AL.

Though under the rules of the commercial law equities might be barred as against the personal liability of the maker of a promissory note, it does not follow that the equities could not be invoked against the enforcement of a mortgage securing the note. Mortgages are not negotiable. When the public records disclose the existence of equities of facts from which presumptions of their existence flow, parties taking mortgages are put upon inquiry, and are not entitled to protection of their mortgage rights solely by reason of the fact that they are the holders of negotiable notes transferred to them by endorsement before maturity for value and in due course of trade. When protection is given to holders of mortgages against equities it rests not upon the negotiability of notes or mortgages, but upon principles of law and equity, which forbid that the binding force of mortgages should be destroyed by secret equities of which the holders of the mortgage had no notice, and for the ascertainment of which the public records furnished him no means of information.

APPEAL from the Eighteenth Judicial District Court for the Parish of Lafourche.   *Caillouet, J.*

*Clay Knobloch & Son* for Plaintiff, Appellee.

*L. F. Southon* and *Beattie & Beattie* for Defendants, Appellants.

Argued and submitted March 13, 1895.
Decided April 8, 1895.

Victoria Vicknair, wife of Felix Lasseigne, was one of eight heirs of Valery Vicknair and his wife Adele.

Felix Lasseigne, her husband, at various dates, bought from the seven other heirs their interest in a certain plantation in Lafourche. Lasseigne and wife were separated in property, and through this purchase her husband became the owner of seven-eighths and she of one-eighth of the property known as the " *Vicknair* " Place. The husband owned a small place known as the " *Lasseigne* " Plantation, where husband and wife resided. The " Lasseigne " plantation *was just below* one owned by *Leufroid J. Trosclair*. *Trosclair* owned also a small place contiguous to the " *Vicknair* " plantation." In the early part of 1889 Lasseigne, the husband of the defendant, Victoria

Vicknair, called on Trosclair, and proposed an exchange of the "*Vick-nair*" for the smaller "*Trosclair*" tract, so as to place those respective lands in one body. Both Trosclair and Lasseigne owed mortgage debts on their respective properties, but the wife's one-eighth seems to have been unaffected by incumbrance. It was proposed, after the exchange should have taken place, to transfer the mortgages; the Trosclair tract to become burdened with the debt of Lasseigne, and the "Vicknair" with that of Trosclair. The ownership by Mrs. Lasseigne of one-eighth in the property about to be exchanged with and transferred to Trosclair stood in the way of the contemplated arrangement. The difficulty was sought to be obviated by Mrs. Lasseigne selling, on the 9th of March, her one-eighth interest in the Vicknair plantation to one Anatole Naquin, nominally for cash, and on the same day, before the same witnesses, Naquin sold this same interest to the husband, Felix Lasseigne. The sale to Naquin was a pure simulation, made for the purpose of selling and transferring the wife's eighth interest to her husband, to the end that the exchange agreed upon could be consummated.

On the 27th March, 1891, the exchange mentioned between Lasseigne and Trosclair was perfected by the former selling the *Vicknair* tract to Trosclair and the latter selling to the former the small *Trosclair* tract. The mortgages on the two places were transferred over from one to the other.

In the exchange or sale of the two properties there was no consideration paid. Each plantation was the equivalent for the other. In April, 1891, the wife brought suit against Trosclair, alleging that the sale from her to Naquin was an absolute nullity, the sale being simulated, and made for the purpose of selling her interest to her husband; that the sale was, in fact, a direct conveyance to her husband. She further averred that she was induced to make said sale to Naquin by coercion of her husband. The defendant set up title under her husband, alleging his good faith in the transaction. The District Court rendered judgment in favor of defendant, and plaintiff appealed. On appeal this court held that it could not treat the defendant *Trosclair* as an innocent third party who acted in good faith upon the apparent validity of the transaction; that he knew the sale made to *Naquin* was a simulated one made for the purpose of placing title to the entire property in the name of the husband in order to be transferred to him. For this and other reasons assigned

the judgment of the District Court was reversed and judgment was rendered in favor of the plaintiff, decreeing her to be the owner of the property described in her petition, and ordering her to be placed in possession of the same.   In view of the fact that parties claiming mortgages on this property were not made parties to the action, their right was reserved to assert whatever claim they might have on the mortgaged property.   Vicknair vs. Trosclair, 45 An. 873.

The present suit is brought by L. M. Layman, alleging himself to be the *bona fide* holder and owner of two promissory notes executed by Leufroid J. Trosclair, dated March 27, 1889, payable to his own order and by him endorsed, one and two years after date, and paraphed to identify them with an act of sale and mortgage passed before Coulon, notary, each of said notes being for the sum of twenty-six hundred and twenty-five dollars.   That he acquired the notes for value before maturity;   that by the said act before Coulon, Felix Lasseigne sold to Leufroid J. Trosclair certain property described therein.   That the two notes were given to represent part of the price and consideration of the sale, and that payment of said notes was secured in the act of sale by special mortgage and vendor's privilege, in favor of any holder of the notes upon the property sold.   That Mrs. Victoria Vicknair, wife of Felix Lasseigne, claimed to own a portion of the said property.   He therefore prayed that notice to pay be served on Trosclair, and notice also be given to Mrs. Lasseigne and her husband, and that after due proceedings a writ of seizure and sale issue directing the sheriff to seize and sell the property to pay his claims.   An order of seizure and sale having been ordered to issue, the sheriff seized the property. This proceeding, which was *via executiva*, was changed by the plaintff to *via ordinaria*, praying for personal judgment contradictorily with Leufroid J. Trosclair, Mrs. Felix Lasseigne and her husband for the amount of his claim with recognition of his mortgage and privilege, and for a sale of the property to satisfy the same.

On the trial it appeared that the plaintiff held the notes as collateral security for the payment of a note held by him against Ernest Roger.

In her answer Victoria Vicknair (Mrs. Lasseigne), defendant, averred that she was the sole and undisputed owner of the one-eighth of the tract of land sought to be sold and claimed to have been mortgaged, having inherited the same from her father and

mother. That her title to the same had been declared valid and binding by a decree of the Supreme Court in the suit entitled Victoria Vicknair, wife of Felix Lasseigne, vs. L. J. Trosclair, said Trosclair being the same person who is her co-defendant in the present suit (45 An. 373). She then as against the plaintiffs reiterates the allegations made by her in the said suit against Trosclair—the simulation of the sale by herself to Naquin—the coercion exercised upon her by her husband to make her consent to that sale—the object of that sale and its ultimate effect to deprive her of her property without consideration, and one really made to her husband, and charges that all these facts were well known to the plaintiff, who she avers was a mere party interposed to do away with her rights and hold her and her property bound by the obligations and contracts of her husband. She alleges that the acts of all of the parties, including the plaintiff, were fraudulent, illegal and in utter bad faith, designed to injure her and her property. She specially denied that the plaintiff was in good faith at the time he acquired the notes, or that he acquired the same before maturity, or for a valuable consideration. She averred that the very act of sale and mortgage on which plaintiff was basing his suit showed the fraud and bad faith which she charges, as it specially declared the title of her husband, who pretended to sell the property therein, was derived from the heirs of Valery Vicknair and his wife, Adele Vicknair, one of whom was herself, the wife of the vendor in the said act, and that all parties were bound to know he could never acquire a legal title. She avers that she is in possession of the land, having been placed in possession by an order of court.

The District Court rendered a judgment in favor of the plaintiff, against Trosclair, for the full amount claimed, and against both defendants (L. J. Trosclair and Mrs. Lasseigne), recognizing as valid and executory against them, and binding upon the whole property claimed to have been sold and mortgaged, the special mortgage and privilege asserted by the plaintiff, and decreeing that the whole of the same be seized and sold to pay and satisfy the judgment then being rendered by preference, and that out of the net proceeds of sale, after payment of all costs and taxes, the plaintiff be paid by preference the amount due him on the personal note of Ernest Roger, for which the notes sued on are pledged.

Mrs. Victoria Vicknair, wife of Lasseigne, appealed.

The opinion of the court was delivered by

NICHOLLS, C. J. The two notes upon which plaintiff sues are those mentioned in the act of sale of 27th January, 1889, from Felix Lasseigne to Leufroid J. Trosclair, representing part of the purchase price of the property then sold, secured by special mortgage and vendor's privilege, and as having been then delivered by the notary to the vendor, Lasseigne. In point of fact these notes represented no part of the price. Ernest Roger, one of the witnesses to the act between Lasseigne and Trosclair was then a creditor of Trosclair to the amount of the two notes, and his indebtedness was secured by mortgage upon the property which the latter sold to Lasseigne (or in point of fact exchanged) for the Vicknair tract. When the exchange was made one property was exchanged as being of equal value with the other, but Roger having raised his mortgage from the land it had previously affected, it was necessary that he should be secured on the property to be substituted in lieu of it. In order to accomplish this the two notes mentioned were made and recited as being part of the price, when in reality they represented simply the indebtedness of Trosclair to Roger, which was then being transferred over as to the mortgage securing it to the newly acquired property.

Roger testifies he acquired the notes on the 27th January, 1889, and the probability is (the recital of the act to the contrary notwithstanding) that they passed directly from Trosclair to him. He says that he transferred the two notes to Layman a few days before the first note fell due as collateral security to secure an amount he had borrowed from him. The evidence is not positive on the point, but we are inclined to think that Roger knew all the facts of the case throughout, although he may not have appreciated fully all their legal consequences. There is no questioning the fact that at the date of the sale from the husband, Lasseigne, to Trosclair, one-eighth of the property which the vendor undertook to sell, and the purchaser, in acquiring, undertook to mortgage, belonged to the wife. We are called on to determine here what effect the mortgage given on that portion of the property has against her, the actual owner. It is pressed upon us that both Roger and Layman acquired the notes before maturity for value in good faith and in due course of trade, and on the faith of the public records, and that they are not to be affected by latent equities or by fraud in other parties. If plaintiff's position were maintained, it would not

be as the result of the application of the rules of the commercial law, cutting off the equities which existed between the original parties to promissory notes by reason of their transfer by endorsement before maturity for value to innocent third parties. We have repeatedly held that though under the rules referred to the equities might be barred as against the maker's personal liability upon a note, yet the mortgage securing it not being negotiable, those equities might be invoked against the enforcement of the accessory obligation. As late as January, 1893, we said in Bank vs. Flathers, 45 An. 78: "Mortgages are not negotiable. We have never to our knowledge held the contrary." It is true that in that case this court allowed the mortgage to be enforced, notwithstanding defences which might have been good between the original parties; but we took especial care to say: "Our opinion rests upon no assertion of the negotiability of mortgages, but upon other principles of law and equity which forbid a man who, as a security for negotiable notes, has executed a mortgage which he had the full right and capacity to make on property belonging to himself by an act suggesting on its face no defect duly recorded and importing confession of judgment in favor not solely of the mortgagee, but of any future holder of the note, to impair its binding force by pleading secret equities created by his own fault, negligence or imprudence, and of which the subsequent holder of the note had no notice and no means of information. When cases arise in which the above elements, or some of them, are missing, we will determine them according to their particular facts."

In Lester vs. Connelly, 46 An. 340, where a married woman separate in property sold by authentic act her paraphernal property, taking notes from the purchaser, secured by special mortgage and vendor's privilege, we ordered the enforcement of the mortgage and privilege (the notes having fallen into the hands of innocent third parties), although the sale was a disguised mortgage for the benefit of the husband. The decision in that case was based upon the fact that the wife had the absolute legal right with the authority of her husband to sell her paraphernal property, and to dispose of the proceeds as she might deem fit. We said " the paraph required the holder to look to the registry of the act with which the notes were identified, which had for its object the protection of third parties. The registry of the act of sale informed the defendant that plaintiff, a married woman, separate in property from her husband, with his

authorization, had sold to one Leveque her paraphernal property, part for cash, and the balance on terms of credit, evidenced by notes. There was nothing in the act to put him upon inquiry, or which remotely suggested that the sale was in fact a mortgage executed for the purpose of raising money for the husband's benefit. There was no duty imposed upon him to inquire into what disposition she made of the proceeds of the sale."

The case just cited differs in material respects from the one at bar. Mrs. Lasseigne did not sell the property to Trosclair with part of the price secured in her favor by mortgage. It was sold, or claimed to have been sold, by the husband, and the mortgage notes were given to neither husband nor wife, but to a creditor of the *vendee himself.* The original holder of the notes, Ernest Roger, not only, in our opinion, knew of the facts of the case, but he additionally applied to Coulon, the notary, before whom all the acts were passed, for information and who unquestionably had full knowledge of the exact situation. Layman, the plaintiff in this case, says that he also, before taking the notes, sought information from Coulon, though he says he was informed by him that everything was right.

In the act of sale from the husband Lasseigne to Trosclair, we find the description of the property sold followed by the words: "Being the same property acquired by vendor of the heirs and legal representatives of the late Valery Vicknair and his wife Adele Vicknair, in the proportion of the one undivided eighth from each of said heirs by public and authentic acts, all duly inscribed in the records of the clerk's office of this parish."

Valery Vicknair and Adele Vicknair, here referred to, were the father and mother of Mrs. Lasseigne, and she was one of the eight heirs from whom the vendor declared he had purchased.

Referring to these words and the reliance placed upon them by counsel of the wife, plaintiff's counsel say: "It is argued that the world was put upon notice, but the court could not do otherwise than hold that they must be taken as a whole, and that any lawyer who would have been employed to trace title or examine records as to mortgages an I incumbrances would certainly have attached more importance to reference by conveyance books, numbers and pages thereof, than to the phrase "acquired of the heirs and legal representatives of the late Valery Vicknair and his wife Adele Vicknair." This last phrase is a mere *ipse dixit* of the notary, which may or may

not be true, but reference to the conveyance books by numbers and pages furnishes information of which all lawyers avail themselves, and by which they are governed in their examination of records as sending them at once to reliable and authentic *data*. Taken as a whole, any lawyer of experience would at once have taken, not the *ipse dixit* of the notary, but the conveyance books to which special reference is made by number and page, and he would readily have ascertained that reference to conveyance book No. 24, p. 372 *et seq.*, was a sale, not by the heirs of Valery Vicknair and wife, one of whom was the co-defendant, Mrs. Felix. Lasseigne, but a sale by Anatole Naquin to Felix Lasseigne, hence Felix Lasseigne did not derive title to his wife's one-eighth from his wife directly.

In looking up titles and mortgages parties are held to examine act by act, mortgage by mortgage, and not to place any blind faith in references to books, numbers and papers, much less to the mere *ipse dixit* of a notary.

A copy of the act of sale last mentioned being in the record, we have examined the same (as it was the duty of all parties relying exclusively " on the faith of the public records " as the ground for maintaining their rights to have examined it), and in this act from *Naquin to the husband* we find it declared that " the property then being conveyed was " *the same property acquired that day before the undersigned notary of Mrs. Felix Lasseigne.*" The record would therefore have disclosed the fact that upon the same day, before the same notary, and before the same witnesses, the property which ostensibly passed from the wife to Naquin for cash, ostensibly passed at once from Naquin to the husband.

A record showing such facts was not of such a character as to form the basis of a claim by any one who dealt with the husband or with Trosclair (the vendee from the husband) that he had been deceived into contracting with them through the condition of the public records, and that " his mortgage rights could not be defeated by secret equities between the original parties of which neither the act nor the public records afforded any notice or means of information." We are of the opinion that when the records show on their face, as it did in this instance, that the property once belonged to the wife, and that when it passed ostensibly from her it went afterward into the apparent ownership of the husband, any one looking at the acts

would have been, or should have been, at once *placed on his guard* as to the reality and good faith of the transactions. We do not mean to say that a case might not arise where property which once belonged to the wife could not properly and legally be subsequently owned by the husband, but any one dealing with property under such circumstances must rely upon something more than the mere face of the record; he must be prepared to sustain the title by an affirmative showing, against an attack made upon it by the wife, on the ground that she had been defrauded of her rights for the benefit of her husband, or her husband's creditors. The time at which either Roger or Layman acquired the notes sued on plays no part in the decision of this case. We have to deal not with the notes, but with the condition of the property as it appeared of record. For the purpose *of the mortgage*, each and both were bound to make an examination of the record. Had the mortgage which is sought to be enforced here been placed upon the property by Naquin, while in his apparent ownership, under the sale from Mrs. Lasseigne, matters would be different from the actual case where the property had passed through the husband before the mortgage was granted. While we realize the importance of construing the law so as to protect the general public in their dealings "on the strength of the public records," we can not consent by construction or from motives of supposed public policy to render nugatory positive laws enacted for the benefit of married women. We have gone as far in that direction as we properly can. Parties defending as against the actual rights of married women, under estoppel claimed, from the condition of the records, must have examined the records, and will be held to have known, or as bound to have known, what appears from them, and to a knowledge of the presumptions which flow from the facts as disclosed by them. If the records furnish means of information, the information must be sought for.

For the reasons herein assigned, it is hereby ordered, adjudged and decreed that the judgment appealed from be and it is hereby annulled, avoided and reversed, in so far as it recognizes and orders to be enforced the special mortgage and vendor's privilege declared upon by the plaintiff upon the property transferred on the 9th of March, 1889, by two public acts before Henry Nicholas Coulon, notary public, from Victoria Vicknair, wife of Felix Lasseigne, to Anatole Naquin, and by Anatole Naquin to Felix Las-

seigne, being the same property claimed by the defendant herein, the said Victoria Vicknair, as having been by her inherited from Valery Vicknair and Adele Vicknair, his wife—her father and mother; and,

It is now ordered, adjudged and decreed that the demand of the plaintiff, Leopold M. Layman, in so far as it concerned the defendant, Victoria Vicknair, wife of Felix Lasseigne, and affected or concerned the property just above mentioned, be and the same is hereby rejected, and the act of special mortgage and vendor's privilege, evidenced by the act of sale and mortgage passed before the said Coulon, notary public, on March 27, 1889, be and they are hereby declared to be null and void, in so far as they affected the said property, and the evidence of the said mortgage and privilege are hereby ordered to be canceled and erased from the records of the parish of Lafourche, in so far as they affect the said property. Costs of both courts to be paid by the plaintiff.