(35 South. 981.)

No. 15,019.

CITY OF NEW ORLEANS v. MANFRE.

(Feb. 1, 1904.)

EXPROPRIATION—VALUE OF PROPERTY—EVIDENCE.

1. In an expropriation suit the value of the property sought to be expropriated may be inferred from the price at which neighboring property has been selling, but this price cannot be proved by the recitals of the instruments evidencing such sales of neighboring property; these recitals being nothing more than the unsworn statements of third persons.

2. On the question of value in an expropriation suit much weight is attached to the verdict of the jury.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

Action by the city of New Orleans against Charles Manfre. Judgment for defendant, and plaintiff appeals. Modified and affirmed.

———

*Rehearing denied February 29, 1904.

Omer Villeré and Philip Stevens Gidiere, for appellant. Wickliffe & Falls, for appellee.

PROVOSTY, J. The sewerage and water board of the city of New Orleans has selected as a site for its water purification and pumping station an area of 26 squares in the Seventh District of the city, and this is one of the suits brought by the city to expropriate the property. The property in question is the four squares numbered respectively 302, 303, 328, and 329. The sole question is as to the value of the property. The jury allowed $9,000, and the appeal is by the city.

The locality is laid out in squares, but all the streets are not open, and such as are open are grown up in grass and weeds. The four squares corner at the intersection of Neron and Gen. Ogden streets. Neron street exists only on paper, the fence of the defendant running across it. Gen. Ogden street is open, but whether in traveling condition the record does not show. Mobile avenue, alongside two of the squares, is also open, but is far from being asphalted. "There is a road along there," says one of the witnesses, "you could drive, but the road is bad. It is grown up in weeds, and many of the bridges are down." The nearest house is two squares away. We find attached to the record a photograph of the improvements on the four squares in question. It shows in the foreground high weeds, and a three-strand barbed-wire fence, and a desolate-looking shanty standing nearly waist deep in the weeds, one post of the fence leaning against it for support; in the background an expanse of weeds, with a few scattered trees.

Three witnesses were offered by plaintiff.

George D. Freidrich, a real estate agent of 25 years' standing, and familiar with the four squares sought to be expropriated, and with the value of property in that neighborhood, considers $1,200 apiece a fair price for the squares. Was employed by the water and sewerage board to ascertain who were the owners of the 26 squares desired to be expropriated by that board, and also the value of the property.

W. R. M. Whitney is chief deputy assessor of the district in which the property is situated, and has been for 11 years. Two of the squares are assessed for $1,000 each, and two for $1,200. The assessment was made by him

and another. Is familiar with the value of property in that neighborhood. Notices all sales that are made. Has himself bought and sold 10 or 15 pieces of property in the neighborhood. Thinks the squares are worth from $1,200 to $1,500 apiece—about $1,200; not over $1,500. Does not consider the price at which sales are made by the lot as a fair criterion of value of the property by the square. The square in which Mr. Nix has been selling lots at prices which would make the entire square be worth $5,000 could not be sold at auction for $2,000.

John F. Richardson, first assistant engineer of sewerage and water board, has familiarized himself with the property in the neighborhood in which the property in question is situated, and with the value thereof, by talking with real estate agents, and with owners generally, and by getting and endeavoring to get options on the property in the immediate neighborhood. Is familiar with the four squares in question. Was offered square 292, which is more valuable, being closer to Carrollton avenue, for $2,000.

In addition to the testimony of these witnesses, plaintiff offered some extracts from sales of property made in the neighborhood, and also an act of sale of two squares by one Taranto to the city of New Orleans in the neighborhood, being squares 271 and 272, for $4,000 for the two. But these extracts, in the first place, are not in the record, and, if they were, could not be considered, any more than can the Taranto act. The statements of the vendors and vendees in these acts, touching the price at which these sales were made, are not sworn testimony. They are mere written statements made out of court, and therefore are not admissible as proof, and the objection to their admission was well made. Greenleaf on Ev. (Redfield's Ed.) vol. 1, §§ 493, 99, 498, 100; Morgan v. Yarborough, 13 La. 76, 33 Am. Dec. 553; Moussier v. Zunts, 14 La. Ann. 15; City of New Orleans v. Sheppard, 10 La. Ann. 268; Hill v. Spangenberg, 4 La. Ann. 553; Dohan's Heirs v. Murdock, 40 La. Ann. 376, 4 South. 338; Layman v. Vicknair, 47 La. Ann. 679, 17 South. 265.

Defendant produced three witnesses.

James T. Nix is familiar with the value of his own property in the neighborhood. Owns

111 La.—30

square 273, about three squares distant from the squares in dispute, and values it at $3,400 to $3,500; but it is nearer to the railroad, which makes it more valuable, and has several residences on it. Is selling lots in his square at an average price of $175 per lot for the naked ground, and the square contains 30 lots. The lots are in squares that have buildings, and buildings add value to the neighboring property; but the buildings are cheap buildings, as a rule. The sales are made on payments of $3 per month. That would make an aggregate price of $5,950 per square. Bought recently from his brother a lot in square 260 (much nearer to car line, and therefore more valuable) for $40, which was on the basis of what the entire square had cost him and his brother in 1900 or 1901, or, say, $1,500 for the entire square. Would not give $2,000 for square 292 (much nearer to car line than squares in question), but would give $1,500; offered $1,200 each for squares 301 and 330 (further than squares in question from car line and less valuable), but did this as a speculation, thinking it was less than he would be able to sell the squares for. If his square 273 were vacant, doubts seriously whether he would take $2,000 for it.

Louis Verret lives in square 233. Sold recently two vacant lots adjoining his own for $150 cash, each. Square 233 is nearer the river and the populated part of the city than are the squares in dispute, and there are a number of residences in the square immediately adjoining square 233, and in square 233 itself there are seven houses. The more buildings in a square the more value is given to the naked lots.

Peter G. Riddell is familiar with the four squares in question, and with the property in the neighborhood. Was defendant in one of the expropriation suits, and attorney in another, and is owner of some of the property yet to be expropriated. Sold two lots in square 306 and 325 at $270 per lot, with palmettos two and three feet high on them; the sale being made on terms of $5 cash and $1 per week, and no interest. Cash terms were 10 per cent. off. Sold also a lot for $200 cash. Squares 306 and 325 are two squares nearer the car line, and can be built on without filling. Does not know whether the four squares in question are equally as high. Because the

lots were sold at the price stated is a reason why the squares as wholes should be estimated at something near the same rate, but not absolutely at the same rate. Purchasers of lots on time are plentiful. Thinks he could without difficulty sell an entire square at $200 per lot or thereabouts.

This is a fair synopsis of the testimony. It shows that the land in question, though within the corporate limits, and divided into squares and lots, yet lies outside of the built-up part of the city, and is available as yet only for cultivation or for holding for speculation. The lots are such only on paper, and are building lots only prospectively—when the growth of the city shall have reached them. As building lots they have as yet only a speculative value.

The price at which certain lots have been sold within, or in the immediate vicinity of, the built-up part of the city, is no criterion to go by. No better proof of this is needed than the statement of counsel that under the computation on the basis of what lots have been sold for as proved in the record the squares in question are worth $16,000. Evidence that leads to such a result is practically worthless.

The highest price shown to have been paid for a square in that neighborhood is $2,000. In view of the verdict of the jury allowing more than this, we shall allow that much; although the preponderance of the evidence (apart from the verdict of the jury, which in such cases is entitled to very great weight) is in favor of $1,200 to $1,500.

The judgment appealed from is therefore reduced to $8,000, and, as thus reduced, is affirmed; defendant to pay the costs of appeal.