(67 South. 922)

No. 19963.

## LOUISIANA RY. & NAV. CO. v. BATON ROUGE BRICKYARD.

(Feb. 8, 1915. Rehearing Denied March 22, 1915.)

*(Syllabus by the Court.)*

EMINENT DOMAIN ⬥124—EXPROPRIATION—VALUATION.

In expropriating property in a portion of a city which is not built up, and through which streets have not been opened or dedicated, the valuation will be based upon the value of the property at the time of taking, and not upon a purely speculative valuation, based upon the prospective value of town lots for residential purposes. If the property expropriated was in a residential section, or in close proximity to one, a different rule would be applied, although the property itself was not actually improved.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 332–344; Dec. Dig. ⬥124.]

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Action by the Louisiana Railway & Navigation Company against the Baton Rouge Brickyard. From judgment for plaintiff, plaintiff appeals. Modified and affirmed.

Wise, Randolph, Kendall & Freyer, of Shreveport, and Laycock & Beale, of Baton Rouge, for appellant. Taylor & Porter, of Baton Rouge, for appellee.

### On Motion to Dismiss.

SOMMERVILLE, J. Plaintiff appeals from a judgment in its favor, and complains of the appraisal fixed by the jury on certain land sought to be expropriated by it in this proceeding.

Defendant moves to dismiss the appeal, as it was not made returnable to, and was not filed in, this court within 15 days, as is directed shall be done in section 1490, R. S.

The trial judge erroneously made the appeal returnable under Act 106 of 1908, p. 163, which is the general statute with reference to appeals to the Supreme Court. That act does not repeal special statutes, or statutes fixing return days with reference to special matters. Kerlin v. Bryceland, 134 La. 463, 64 South. 289. But appellant does not appear to have been responsible for the error, and the appeal will not therefore be dismissed.

In the case of Ross v. Naff, 130 La. 590, 58 South. 348, this court say:

"The facts that the appellant made his application, and that the court made the order for the appeal, under a misapprehension of the law governing the matter, cannot operate to deprive the appellant of a right conferred on

him by the Constitution and regulated by other statutes than that contemplated by him and the court." Chaffe v. Heyner, 31 La. Ann. 594; Elder v. City of New Orleans, 31 La. Ann. 500; State v. Dellwood, 33 La. Ann. 1229; State v. Balize, 38 La. Ann. 542; State v. Phelps, 132 La. 399, 61 South. 415.

Motion to dismiss appeal is denied.

This proceeding, brought by the Louisiana Railway & Navigation Company against the Baton Rouge Brickyard, is for the purpose of acquiring a strip of ground twenty-five feet wide through the property of defendant, to be used by it as a part of its branch or belt line of railroad through and around the city of Baton Rouge. The property sought to be expropriated runs across the northeastern portion of defendant's property situated in the city of Baton Rouge, and comprises $31/100$ of an acre in superficial area.

Defendant acquiesces in the demand for expropriation, but claims from the plaintiff, for the value of the property taken and for damages, $13,300. Defendant alleges that the chief value of the property sought to be expropriated is for residence purposes; that the twenty-five foot strip of land herein sought to be taken from the defendant cuts or crosses the equivalent of eight city lots; that in the construction of the proposed branch line of railroad plaintiff proposes to and will make a 4-foot cut across defendant's said lots; that said lots are well and truly worth the sum and price of $1,200 each, or $9,600, for which damage petitioner is responsible; that in order to be reasonably safe from fire and to secure a reasonable rate on fire insurance, defendant's brick sheds will have to be cut off to a point twenty-five feet from the south line of plaintiff's proposed branch road, and they will have to be covered with fireproof roofing, all at a cost of $2,000; that the building of said proposed branch road, and the making of said 4-foot cut, will inclose, cut off, and shut in a triangular piece of land belonging to defendant, and comprising three full city lots, two of which are worth $1,200

each, and one of which is worth $1,000; and that it will be damaged to the extent of $1,700.

There was judgment in favor of plaintiff condemning the property, and condemning plaintiff to pay $6,000 for the property expropriated.

Plaintiff company obtained from the city council of Baton Rouge a franchise for a belt line in that city; and, in furtherance of the exercise of that franchise, it seeks to expropriate $31/100$ of an acre of land belonging to defendant, upon which to lay its tracks. It is proposed to extend these tracks through defendant's property, which would virtually destroy three squares, if the plot of ground was divided into squares. The tracks would cut off small triangular corners of four other supposed squares, which damage would be more than compensated by the triangular pieces remaining of the three squares first mentioned. The triangular piece of land which defendant says equals three city lots, and for which it claims $1,700, is small, and it is located on a drainage canal. It hardly contains one lot; and it is of very little value if segregated from the other portions of ground belonging to defendant.

The court is uniformly guided by the finding of the jury of freeholders of the vicinage where the property is located which is to be expropriated in fixing the value of expropriated property and the damages resulting to the property holder from the improvement. But, when the verdict is manifestly excessive, as it is in this case, it becomes necessary to amend it. The jury has here condemned plaintiff to pay about $6,000 for less than one-third of an acre located in the southwestern limits of the city of Baton Rouge, according to a city survey made in 1910. This is at the rate of $18,000 an acre, which is an impossible price.

The evidence shows that the property is

high, and if streets were cut through it, it would be suitable for small and unpretentious dwellings, but that it is now used for a mercantile purpose, a brickyard, and that it lies between a drainage canal and the tracks of the Yazoo & Mississippi Valley Railroad. Streets of the city have not been extended through the property, or even dedicated; and it may be long before the property so shut in may be used for any other purpose than the one it is now used for.

In the case of Y. & M. V. R. R. Co. v. Longview Sugar Co., 135 La. 542, 65 South. 638, we quote from 2 Dillon on Municipal Corporations, p. 617, as follows:

"In an expropriation suit for railroad purposes, the market value of property taken, viewed both with reference to its use at the time and with reference to the usage to which it is plainly adaptable, will be considered in fixing the value of the land."

And in the case of Y. & M. V. R. R. Co. v. Teissier, 134 La. 958, 64 South. 866, we quote from United States v. Chandler-Dunbar, 229 U. S. 53, 33 Sup. Ct. 667, 57 L. Ed. 1063, as follows:

"A 'strategic value' might be realized by a price fixed by the necessities of one person buying from another, free to sell or refuse as the price suited. But in a condemnation proceeding the value of the property to the government for its particular use is not a criterion. The owner must be compensated for what has been taken from him, but this is done when he is paid its fair market value for all available uses and purposes."

To the same effect are decisions in Orleans & Jackson Ry. Co. v. Jefferson & L. P. Ry. Co., 51 La. Ann. 1605, 26 South. 278; Opelousas, G. & N. E. R. Co. v. Bradford, 118 La. 506, 43 South. 79. See, also, Lewis on Eminent Domain, paragraphs 478 and 479.

The testimony as to the value of lots in the section of the city where defendant's property is located is as contradictory as is usual in such cases.

And this testimony is of little assistance to the court for the reason that the proposition submitted in the cause is the value of a strip of ground running through fourteen acres of land belonging to defendant, which is not subdivided into lots or squares, and where there are no streets laid out or dedicated. The paper sketch submitted by defendant will doubtless not be followed if it should dedicate streets through its grounds, in view of the railroad tracks which will have been located by plaintiff at that time. And should defendant abandon its brick-making business and offer city lots for sale, it will not offer them according to its present paper sketch.

It has been held by this court that:

"The criterion of value is the market value of the property at the date of the institution of the expropriation suit, in view of any use to which it may be applied and of all the uses to which it is adapted, exclusive of any increase in value given by the construction of plaintiff's railway thereon. The question before the jury was, What price would have been obtained for the property as a whole by a prudent seller in the usual course of business? The market value means the fair value of the property between one who wants to purchase and one who wants to sell, under usual and ordinary circumstances. Market value does not mean speculative value. Railroad Co. v. Railroad Co., 51 La. Ann. 1616, 26 South. 278; Louisiana Ry. & Nav. Co. v. Xavier Realty Co., 115 La. 328, 39 South. 1.

"At the time of the institution of this suit the tract in question had not been subdivided, and the question before the jury was as to the market value as a whole, considering all the uses to which it was adapted. The value of the tract for 'town lot' purposes was one of the factors to be considered, but what the owner or purchaser might realize by a subsequent subdivision of the property and sale of lots partakes too much of the character of speculation to serve as a basis of valuation at the date of the institution of the present suit."

"So it is proper to show that property possesses a peculiar value for railroad purposes, for dock purposes, for mill site, for a ferry, for market gardening, for raising cranberries, for warehouse purposes, or for a bridge site. It is proper to show that the property is suitable for division into village lots, and that it is valuable for that purpose, but it is not proper to show the number and value of such lots." Lewis, Eminent Domain, vol. 2 (2d Ed.) pp. 1054, 1055.

"In a case in Wisconsin it was held proper to show that property was suitable for division into village lots and the probable value of such lots. But this is clearly going a step too far. The probable value of village lots which do not exist is too speculative." Lewis, Eminent Domain, vol. 2 (2d Ed.) p. 1058.

It is evident that the jury based their verdict on defendant's lot scheme, as nearly every witness fixed the value of these supposed lots by comparison with lots in the long established part of town.

The testimony relative to the number of supposed lots and their value was objected to by counsel for plaintiff, on the ground that it had been shown and was an admitted fact that the land had not been laid off into squares and lots, and that there were no streets, etc.

The objections should have been sustained. The testimony for defendant is not as to the value of the land, or of the strip to be taken by plaintiff for its tracks, but is as to the value of city lots, a purely speculative or supposed value of something not in existence.

Under somewhat similar circumstances concerning certain squares in the city of New Orleans, which were laid out and divided into lots, but through which all the streets were not actually open, and which were outside of the built-up parts of the city, we say:

"This is a fair synopsis of the testimony. It shows that the land in question, though within the corporate limits and divided into squares and lots, yet lies outside of the built-up part of the city, and is available as yet only for cultivation or for holding for speculation. The lots are such only on paper, and are building lots only prospectively—when the growth of the city shall have reached them. As building lots they have as yet only a speculative value." City of New Orleans v. Manfre, 111 La. 927, 35 South. 981.

The case must be decided upon competent evidence going to show the value of the property taken by plaintiff, without regard to speculation, or to the possible abandonment by defendant of its present business enterprise, or to improvements in the way of dedication of streets, etc., which the owner may possibly make in the future.

In the volume of testimony in the record, much of it being most contradictory, we find that that of Capt. O. B. Steele, a witness for plaintiff, who was engaged in the real estate business, is based upon a clear appreciation and understanding of the exigencies and conditions of expropriating a right of way for a railroad through a plot of ground, and his valuation of the property will be adopted as the basis for the judgment of the court. He says, on cross-examination:

"Instead of merely paying for the area, or the superficial feet equivalent to a lot, or the number of lots taken, it [the railroad] should pay a good deal more. My answer is this that the area being equal to two lots and the lots being worth $400 or $500, then I think they should pay $1,200 to $1,500 for this piece of property. Q. Then you consider that these lots are worth $400 or $500 each? A. No, sir; I do not say that. I said this: If they were laid off before this railroad came there, that they might sell for $400 or $500."

The witness further testified that the property was not and would not be desirable for residential purposes, but with the railroad there it would be good for commercial purposes.

As to the cost of removing and rebuilding parts of the brick sheds on defendant's property, the testimony is equally conflicting. It ranges from $509 to $2,100.

C. B. Stewart, a contractor, and witness for plaintiff, testified that he would do all the work necessary, giving it in detail, for $1,000, with bond, which figure will be adopted as a liberal estimate, as it embraces even more work than is deemed by the court to be necessary to be done.

It is therefore ordered, adjudged, and decreed that there be judgment amending the judgment appealed from by reducing it to $2,500 for the right of way sought by plaintiff in this suit, and, as thus amended, it is affirmed, at the cost of plaintiff in both courts.