. No. 3980

Second Circuit

DIMMER v. DAVIS BROS. LUMBER CO., LTD.

(July 14, 1931. Opinion and Decree.)

Wm. J. Hammon, of Jonesboro, attorney for plaintiff, appellant.

Theus, Grisham, Davis & Leigh, of Monroe, attorneys for defendant, appellee.

McGREGOR, J. On January 7, 1905, and for many years prior thereto, Kittie Dimmer, a negro woman, the plaintiff herein, and Frank Dimmer were husband and wife, living together as such. During the community existing between them there was acquired one 160 acres of land described as follows:

"West Half (W½) of the Southwest Quarter (SW¼) of Section Twenty-seven (27) and the East Half (E½) of the Southeast Quarter (SE¼) of Section Twenty-eight (28), Township 17 North, Range 2 West, in the Parish of Jackson."

On January 7, 1905, the plaintiff and her husband appear to have quarrelled, and on that date they went to Ruston and met Dr. A. E. Simonton, who evidently was a friend to the two negroes. On this occasion Frank Dimmer executed an act of sale to Dr. Simonton conveying the above-described land and all the personal property of every kind and description owned by him and the plaintiff, including three hogs, seven head of cattle, one hundred bushels of corn, and sixty bushels of cotton seed. Kittie Dimmer, the plaintiff, joined in this sale for the alleged purpose of "signing away all of her rights in the premises." The consideration was apparently nominal. On the same day, and at the same time and place, before the same notary and witnesses, Dr. Simonton executed an act of sale purporting to convey the identical property to the plaintiff for approximately the same consideration. In addition to signing the first deed as vendor, Frank Dimmer signed both of them for the purpose of "authorizing his wife to sign." The deeds were filed for record at once, but for some unknown and unexplained reason were recorded two days apart. In each deed Frank and Kittie Dimmer are

referred to and treated as husband and wife. It is patent that the two deeds were simultaneously executed, and that for all intents and purposes they constitute one act—an attempted transfer of the title of the community property from Frank Dimmer, the husband, to Kittie Dimmer, the wife. It is evident that Dr. Simonton was merely an interposed party for the purpose of avoiding the appearance of the attempt to have the husband make a sale of the community property to the wife —a thing that is prohibited by law. There was no thought of a divorce, although the couple separated on that day for an indefinite time.

After the lapse of time, how long or short we do not know, Frank Dimmer returned home to his wife, and they resumed their marital relations, and lived together for many years until Frank Dimmer's death, which occurred about five or six years before the trial of this case.

On March 5, 1923, while he was living with his wife, the plaintiff herein, Frank Dimmer executed a deed to the defendant, Davis Bros. Lumber Company, Limited, conveying all the merchantable timber standing and growing on the land described above for a consideration of $275 cash. This transaction took place and the deed was signed in the home of Frank and Kittie Dimmer, though the plaintiff denies any knowledge or recollection of it.

After the death of her husband, the plaintiff continued to live on the property and to farm it as usual. She contends that she has only recently learned of the sale of the timber by her husband to the defendant. This suit is brought by her in the form of a jactitation suit in which she alleges that defendant's claim of the ownership of the said merchantable timber and the recordation of its deed to the same is a slander on her title to the said land, and that it has damaged her to the extent of $1,000. She prays for the cancellation of the inscription of defendant's title to the timber and for judgment for $1,000 as damages on account of the alleged slander of her title. On trial of the case in the lower court, there was judgment in favor of the defendant rejecting the plaintiff's demands. In support of the judgment, the trial judge handed down a very able and learned written opinion. From this judgment the plaintiff has appealed.

## OPINION

While the plaintiff's petition alleges that she is the owner of the land described in the above statement of the case, the record is clear that it is not her paraphernal property, and never was. On the contrary, when it was first acquired, it was community property, and, when the two so-called deeds of January 7, 1905, were passed and recorded, it was still community property. Plaintiff's counsel objected to any testimony going to show that plaintiff and Frank Dimmer were husband and wife, but, since the testimony was admitted over his objection, he admits the truth of it, and declares in his brief that as a consequence thereof "there can be no contention on behalf of plaintiff that the land was not community property." But the fact of their marriage and of their living together as husband and wife needed no testimony to prove it. The very deeds by which plaintiff alleges she acquired the ownership of the property set forth in unmistakable terms this fact. The plaintiff joined in the sale of the property to Dr. Simonton as the vendor by and with the authority of her husband, and she signed the deed as vendee from Dr. Simonton by and with the consent and authority of this same husband. There was no pretense in

this deed that the plaintiff was buying the property with her paraphernal funds or for her separate use and benefit. So that, after the execution and recordation of the two deeds of January 7, 1905, the property in question belonged to the community just as it did before.

If these two deeds had never been executed and recorded, it is admitted that defendant's deed to the timber would be unquestioned. But plaintiff's position is that, conceding that the property was community property at the time of the execution and recordation of defendant's deed, it was standing on record in the name of the plaintiff, and that she was the only one that was competent to sign a deed and convey a legal title to it. This contention is based solely on the case of Garlick v. Dalbey, 147 La. 18, 84 So. 441. That case cannot be used as authority for this position. In that case the community property was rightfully standing in the name of the wife. When it was sold, the wife appeared as vendor, and the husband signed to authorize her. Later on, the wife undertook to repudiate the sale and to set it aside on the ground that it was her separate property and not community property, and that the sale was really a disguised mortgage given to secure her husband's debt—a thing she had no right to do. The defense set up against her attack was that the property was community property. She met this defense by the contention that, when the vendee accepted a deed from her in her name as owner, aided and assisted by her husband, he (the vendee) was estopped from asserting that the property in fact was community property. The court held that, even though the deed was signed by the wife with the authority of her husband as though it were her separate property, if in fact it developed that the property was community property standing in the name of the wife, the deed as signed would legally convey the community title, and that the vendee had the right to show that the property was community and not paraphernal. The court then held that under the evidence the property had been proved to be community, though standing in the name of the wife, and that a deed signed by her with the authority of her husband properly conveyed the community title to the property. Inferentially the court did say that, when the title to community property is in the wife's name, she is without power to convey it to her husband so that he may sell it, and held, of course, that she was the proper party to sign the deed as vendor for the community. When the court held that the wife could not convey the title directly to the husband in order for him to convey it to a third party, it necessarily held that what she cannot do directly she has no right to do indirectly, so that she would have no right to sell the community property to an interposed third party for the purpose of having this party convey the title to her husband. This expression of the court to the effect that the wife could not transfer the title to the husband cuts both ways, and is equally authority for the position that the husband cannot transfer the title of the community property to the wife either directly or indirectly through an interposed third party. So that this Garlick v. Dalbey case is not authority on the question as to how community property shall be transferred when the title is standing in the name of the wife. It merely holds that a deed of a certain kind does convey the title—not that another kind *does not*.

However, it is not necessary to decide this question in this case. It is admitted that, when the plaintiff and her husband first acquired this property in the name of

the husband, it was community property. Prior to and on January 7, 1905, this community property stood in the name of Frank Dimmer, the husband. If he had undertaken to make a sale of the property directly to his wife on that day, it would have been an absolute nullity as being violation of a prohibitory law, and a sale made by him after that to another person would have conveyed a perfect title, and the vendee would have a right to ignore the sale to the wife as an absolute nullity. Also the property in such case would remain subject to seizure by creditors of the community without the necessity of revocation by direct action. The case of Rush v. Landers, 107 La. 549, 32 So. 95, 100, 57 L. R. A. 353, is directly in point. In the course of that decision the court said:

"But in the case at bar the putative sale from husband to wife, purporting to have been made for money in hand paid, is not valid upon its face, but is distinctly invalid, as being apparently in violation of a prohibitory law. It cannot, therefore, be said to evidence a real transaction, but leaves the title to the property, apparently, in the vendor, and subject to seizure at the suit of his creditor."

It might be said that the above case is not applicable to the one at bar, for the reason that in this case the plaintiff never received her deed from her husband, but from Dr. Simonton. But the Supreme Court has held that, when the title of property is passed from the husband to the wife, or from the wife to the husband through an interposed party, it is an unlawful attempt to evade a prohibitory law, and that deeds of this kind are so absolutely null and void they may be ignored as not existing, and that it is not necessary to resort to a direct action of revocation. It is particularly held that under circumstances such as prevail in this case, where it is apparent from the record that there is an interposed party between the husband and wife, this fact does not have to be proved by testimony, but that the transaction may be ignored as never having existed. In the case of Vicknair v. Trosclair, 45 La. Ann. 373, 12 So. 486, 489, a case very similar to the one under consideration, the court said:

"It was null and void for two reasons:
"(1) The coercive influence of the husband in procuring the sale from her to Naquin.
"(2) As he was an interposed party, in order that the husband might purchase the wife's interest, it was in fact a sale from the wife to the husband, not embraced within the exception mentioned in Civil Code, art. 2446, and was in contravention of Civil Code, art. 1790."

In the case of Layman v. Vicknair, 47 La. Ann. 679, 17 So. 265, 268, the court said:

"*In looking up titles and mortgages, parties are held to examine act by act, mortgage by mortgage, and not to place any blind faith in references to books, numbers, and papers, much less to the mere ipse dixit of a notary.* * * *
"A copy of the act of sale last mentioned being in the record, we have examined the same (as it was the duty of all parties relying exclusively 'on the faith of the public records' as the ground for maintaining their rights to have examined it), and in this act from Naquin to the husband we find it declared that the property then being conveyed was 'the same property acquired that day before the undersigned notary of Mrs. Felix Lasseigne.' *The record would, therefore, have disclosed the fact that upon the same day, before the same notary, and before the same witnesses, the property which ostensibly passed from the wife to Naquin for cash ostensibly passed at once from Naquin to the husband.*
"A record showing such facts was not of such a character as to form the basis of a claim by any one who dealt with the husband or with Trosclair (the vendee from the husband) that he had been deceived into contracting with them, through the condition of the public records, and that his mortgage rights could not be defeated

by secret equities between the original parties, of which neither the act nor the public records afforded any notice or means of information.' *We are of the opinion that when the records show on their face, as it did in this instance, that the property once belonged to the wife, and that when it passed ostensibly from her it went afterwards into the apparent ownership of the husband, any one looking at the acts would have been, or should have been, at once placed on his guard as to the reality and good faith of the transactions.*" (Italics ours.)

The above case was cited with approval in Douglass v. Douglass, 51 La. Ann. 1455, 26 So. 546. The syllabus in that case is as follows:

"1. The proof disclosing that a married woman conveyed real estate to her husband through the interposition of a third person, and without having received any consideration therefor, the transaction is a fraudulent simulation, and violative of a prohibitory provision of the Civil Code.

"2. In such a case, a deed from the wife to a third person, and from such third person to the husband, executed on the same day, before the same witnesses, in the same handwriting, and put on record on the same day, must be viewed as one transaction, the object of which was to devest the title of the wife, and vest it in her husband."

As already stated, it is patent on the face of the record that Dr. Simonton was merely an interposed party. Since he was such, the two deeds taken together are nothing more or less than an attempt of the husband to make a sale of the community property to the wife, a thing which he is prohibited from doing by the law. These two deeds of January 7, 1905, are therefore absolutely null and void, and Frank Dimmer was the only person authorized to execute a deed to any one conveying any portion of the community property the same after January 7, 1905, as he was

before. After examining the record and viewing these two deeds, the defendant was fully justified in ignoring them and in dealing with Frank Dimmer as the head and master of the community, with full authority to sell all property belonging to the community as fully and freely as if the two said deeds had never been executed and recorded.

For the reasons assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and it is hereby, affirmed; and that the plaintiff pay all costs of both courts.