GLADNEY, Judge.
This is an expropriation proceeding in which plaintiff seeks judgment decreeing compensation in the amount of $9,400 for property taken from defendant for purposes of highway construction. Defendant, Mike J. Varino, answered and asserted a reconventional demand wherein he prayed that compensation be fixed at $16,-000. After trial on the merits, the lower court rendered judgment fixing compensation at $9,400. Defendant appeals from that decree.
On December 16, 1959, the Louisiana Board of Highways authorized, by way of proper resolution, the taking by expropriation or otherwise of property necessary for proper construction of State Project No. 451-06-06, Federal Aid Project No. 1-20-3(11)115, West Monroe-Monroe Highway (Substructures-Ouachita River Bridge), on State Route La. 1-20. The subject premises, a tract fronting on South Grand Street in Monroe and owned by defendant herein, are entirely within the right-of-way certified by plaintiff’s Chief Engineer as requisite to the construction of the aforesaid project. At plaintiff’s request, two licensed realtors and appraisers examined the premises and submitted to plaintiff their certified valuation of the land and improvements at the amount of $9,400. Plaintiff deposited that amount into the registry of the district court and an order of expropriation was issued on February 29, 1960.
The expropriated property has a 48 foot frontage on South Grand Street and is bounded on the rear by the bank of the Oua-chita River. It is approximately six blocks south of DeSiard Street, two and one-half blocks south of the Court House, and five and one-half blocks southwest of the St. Francis Hospital. Located on the tract is a one-story frame house, containing seven rooms, an attic, and a large cement floored basement. The structure was estimated to be some twenty-five to forty years old, and has been used by defendant for many years as a family residence. A sheet metal garage is located in the rear of the residence.
Defendant did not contest plaintiff’s right to expropriate the property, but by way of reconventional demand averred that the fair and reasonable compensation for said expropriation was $16,000. Upon trial of this cause the market value of the lot was fixed at $8,400, which valuation was. accepted by both parties. Consequently,, the sole issue on appeal is as to the proper-compensation due defendant for the improvements located on the expropriated: tract.
The record of this case contains testimony of four real estate appraisers of reputation and many years’ experience, two of whom testified on behalf of the Department, of Highways and two on behalf of defendant. All four of these witnesses were of the opinion that the expropriated property was best suited to, and would attain its. greatest value from, use as commercial property. The record reveals that the entire neighborhood was undergoing a gradual but steady transition from a residential to a commercial district, and the: *497 accepted value of the lot, $175 per front foot, was predicated on the market value of the property for commercial usage. Plaintiff’s appraisers testified, however, that the residence located on the property was not suited for commercial usage, and they therefore merely ascribed a $1,000 salvage value thereto. On the other hand, defendant’s appraisers were of the opinion that the structure could be converted, by a modest expenditure of some $1,850, into an acceptable office for doctors, lawyers, etc., with a rental value of approximately $150 per month. Therefore, they considered the income approach to be the most feasible method of evaluating the property, and by utilizing that method, arrived at a valuation of from $4,648.86 to $5,592 for the building.
In support of the income approach, defendant introduced evidence pertaining to several residences of comparable age which are presently being rented by doctors for approximately $150 per month. Although these are located in the same general area as the subject premises, their proximity to the St. Francis Hospital is several blocks nearer than the Varino property. Furthermore, there is some question as to whether the subject premises could be remodeled so as to provide parking facilities comparable to those now available at the previously converted residences.
Our jurisprudence is well established to the effect that rental value is not of itself an acceptable method of determining proper compensation for expropriated property, but that consideration of the rental value is material to the extent that it assists in establishing the fair market value of the property. Efurd v. City of Shreveport, 1958, 235 La. 555, 105 So.2d 219; Rapides Parish School Board v. Nassif, 1957, 232 La. 218, 94 So.2d 40; Housing Authority of New Orleans v. Persson, 1943, 203 La. 255, 13 So.2d 853. However, we are confronted herein with the question of whether the rental value ascribed to the residence by defendant’s appraisers is predicated upon a use of the premises to which it is readily adaptable, or whether such use is merely within the realm of speculation.
The Supreme Court thoroughly reviewed the question of determining proper compensation for property expropriated to public use in Parish of Iberia v. Cook, 1959, 238 La. 697, 116 So.2d 491, 496. Therein the court stated:
“In determining the market value of property expropriated, it must be conceded that it is not merely the value for the use for which it has been applied by the owner that should be taken into consideration. The possibility for its use for all available purposes for which it is adapted and to which it might in reason be applied should be considered. The ultimate test of value in that respect is what men of wisdom and prudence and having adequate means would devote to the property if owned by them. On the other hand, possible uses which are so remote and speculative and which would require the concurrence of so many extrinsic conditions and happenings as to have no perceptible effect upon present market value should be excluded from consideration. In speaking of adapted uses of the property, it is meant the use of the property in its p'resent condition as a whole. The owner’s plans or hopes for the future should be held completely irrelevant, being more often illusory than real.
* * * * * *
“The appraisal of defendant’s witnesses of $1.25 per square foot is based upon a purely speculative and hypothetical value of the land once the construction of an expensive roadway and the expenditure of large sums for buildings to house the businesses which these witnesses contemplate will become a reality * * * The value which defendant’s witnesses have placed on the property, based as it is *498 on such speculative and illusory factors, is unacceptable.”
The question of speculative use as distinguished from readily adaptable use frequently arises with regard to expropriation of land which may have developmental value as subdivision property. Valuation as such has frequently been held to be too speculative to admit of compensation. Parish of Iberia v. Cook, supra; Plaquemines Parish School Board v. Miller, 1953, 222 La. 584, 63 So.2d 6; Louisville & N. R. Co. v. R. E. E. De Montluzin Co., Inc., 1928, 166 La. 211, 116 So. 854; Louisiana Ry. & Nav. Co. v. Baton Rouge Brickyard, 1915, 136 La. 833, 67 So. 922, L.R.A.1917A, 402; Louisiana Ry. & Nav. Co. v. Sarpy, 1910, 125 La. 388, 51 So. 433. However, in several instances the courts have awarded compensation on the basis of subdivision value. Lafayette Parish Through Police Jury of Lafayette Parish v. Hernandez, 1957, 232 La. 1, 93 So.2d 672; Louisiana Power & Light Company v. Simmons, 1956, 229 La. 165, 85 So.2d 251; City of Shreveport v. Abe Meyer Corporation, 1951, 219 La. 128, 52 So.2d 445. Our appreciation of the jurisprudence in this regard is that the adaptability of the property to sub-divisional purposes must be clearly established in order for valuation of the property for such purposes to become a factor in fixing compensation: An illustrative instance of such clear adaptability appears in the recent case of Arkansas Louisiana Gas Company v. Morehouse Realty Company, Inc., La.App., 126 So.2d 830, 832, with Ayres, J. as organ, wherein it was stated:
“The record very clearly establishes that this property is suited, by reason of its location in, and proximity to, the City of Bastrop, as well as its proximity to subdivisions already developed, and by reason of its topography, for development as a subdivision. The intention of the defendant in purchasing the property, the actual development into a subdivision of an area adjacent to the property involved, and the completion of the preliminaries to the development of this identical area into a subdivision, remove the matter, in our opinion, from the realm of conjecture and speculation into one of reality.”
In our opinion, the adaptability of the subject structure to commercial office purposes has not been sufficiently established to admit of compensation as such. The only evidence in the record as to transition of comparable buildings to office purposes relates to property out of the immediate vicinity. Defendant’s contentions as to rental value of the property assume the existence of several factors, all of which are in the realm of pure conjecture, to-wit: that the contemplated improvements would be sufficient to transform the premises; that sufficient rental could be realized to justify the contemplated improvements; that sufficient parking facilities could be made available for a commercial tenant; and that, in any event, a tenant could be found for the premises.
In light of the authorities cited herein we cannot ascribe manifest error to the lower court’s finding that the adaptability of the premises to office purposes was not sufficiently established. Accordingly, the judgment from which appealed is affirmed at appellant’s cost.