135 So.2d 329 (1961)
STATE of Louisiana, through DEPARTMENT OF HIGHWAYS, Plaintiff-Appellee,
v.
Clem S. CLARKE, Defendant-Appellant.
No. 9592.
Court of Appeal of Louisiana, Second Circuit.
November 22, 1961.
*330 Simon, Carroll, Fitzgerald & Fraser, Shreveport, La., for appellant.
W. Crosby Pegues, Jr., D. Ross Banister, Glenn S. Darsey, Brunswig Sholars, Chester E. Martin and Jesse S. Moore, Jr., Baton Rouge, for appellee.
Before HARDY, AYRES and BOLIN, JJ.
BOLIN, Judge.
This is a suit to expropriate certain property of defendant located in the City of Shreveport, for use in a highway project known as the Shreveport Expressway. The only controversy relates to the fair market value of the property expropriated.
Plaintiff tendered the sum of $9,225 for the property, which amount was deposited in the registry of the Court and withdrawn by defendant. Clarke, by answer, contended the fair market value of the property as of the date of expropriation was in excess of $20,000.
On trial of the case, appraisers for the State, O. L. Jordan and Lawrence L. May, Jr., testified, respectively, that the property was worth $9,925 and $9,400; while appraisers for defendant, J. Pollard Sealy, Jr. and M. E. Hurlbut, testified, respectively, that the property was worth $20,500 and $20,000. The trial judge fixed the value at $14,956.25, the average of all estimates, or an increase of $5,731.25 over the amount originally deposited. This additional amount was also deposited in the registry of the court and withdrawn by defendant.
Defendant has appealed, asking that the award be increased to $20,000, and plaintiff has answered the appeal in an effort to reduce the award to $9,225. Both parties specify error in the lower court's failure to accept the appraisal of their respective experts and failure to disregard the testimony of the opposing expert witnesses. Further error is alleged in the trial court's method of averaging the valuations in order to arrive at the value of the property taken.
The parcel expropriated consisted of a tract of land located at the intersection of Murphy Street and Fairfield Avenue in the City of Shreveport, fronting 66.45 feet on Fairfield and 72.91 feet on Murphy; with a dimension on the West of 62.89 feet and a dimension on the South of 68 feet. Improvements thereon consisted of a brick filling station building, with two rest rooms, three gasoline pumps, underground storage tanks and hydraulic lift, with paved driveways and service areas. The property was acquired by defendant through inheritance from his mother, Mrs. Maude Steele Clarke, who had purchased the property from Lloyd D. Leeper by deed dated October 3, 1927. This deed recited as consideration the sum of $4,500 "and other good and valuable considerations", and the testimony of Lloyd D. Leeper and Clem S. Clarke established the actual consideration to be approximately $17,500.
At the outset we desire to put the sole issue of this appeal in its proper perspective. Since the taking of the property was not contested by defendant, the sole purpose of the trial and the duty placed upon the trial judge in rendering his decision herein was to guarantee the defendant his basic constitutional right that his property would not be "* * * taken or damaged except * * * and after just and adequate compensation is paid." (LSA-Const. art. 1, Sec. 2.) This basic guarantee is not only found in the Bill of Rights of the Louisiana Constitution, but also in the Bill of Rights of the Constitution of the United States, (U.S. Constitution, Amendment V) *331 and is one of the fundamental protections afforded the citizens of the United States and of the several states. When plaintiff took defendant's property and made an offer therefor, defendant did not consider the offer "just and adequate compensation" and therefore appealed to the judiciary to so determine whether his constitutional guarantee had been fulfilled by plaintiff's offer. The trial judge was faced with this fundamental and serious question and we have no doubt that he rendered what he considered a sound decision.
The term "just and adequate compensation" as used in the hereinabove cited Louisiana Constitutional guarantee generally denotes market value, and to determine market value of property, various "approaches" have been recognized and utilized by our appellate courts. State Through Department of Highways v. Crockett, (La.App. 2 Cir., 1961) 131 So.2d 129. That the comparable sale or market data approach in determining market value of property is, when available, the best approach, has been consistently recognized by Louisiana's appellate courts and consequently requires no citation.
When evidence as to comparables is unsatisfactory, ascertainment of true value must be sought by a consideration of other factors and circumstances; and the rental value of property, while not alone decisive, is material insofar as it throws light on the market value of the property. Such a method may be generally classified as the "rent approach". City of Alexandria v. Jones, 236 La. 612, 108 So.2d 528 (1959); Efurd v. City of Shreveport, 235 La. 555, 105 So.2d 219 (1958); State of Louisiana, Through Department of Highways v. Crockett, supra; State of Louisiana, Through Department of Highways v. Varino, (La.App. 2 Cir., 1961) 129 So.2d 495.
We are inclined to believe that in many of the reported cases before this and other appellate courts the term "approach" has assumed a somewhat mystical and sacramental meaning. The basic and fundamental issue herein is not approach, but rather the basic and fundamental guarantee that just and adequate compensation will be paid the private citizen when his property is taken for public purposes. The approach is merely a tool to be used in determining value and safeguarding this guarantee.
The substantial difference in market value of the property as found by the two sets of appraisers appears to be the result primarily of the State's appraisers utilizing almost exclusively the so-called "income approach" and having further accepted $75.00 net as the monthly rental potential of the expropriated property. These experts did not consider the value of the property from any standpoint other than that of its use as a service station and devoted the major portion of their efforts toward endeavoring to show that tracts of this size were no longer suitable for the operation of service stations. In support of this contention, they offered in evidence a number of photographs of properties formerly operated as service stations that were either vacant or were being used for some other purpose at the time of their appraisals. They gave no effect to the contention made by defendant that the basic rental figure used reflected a value to a lessee under adverse conditions which had existed over a period of several years immediately preceding the expropriation. The record reflects there had been extensive street improvements in the vicinity of this property independent of the construction occasioned by the expropriation involved herein. These improvements would have inured to the benefit of subject property had defendant been able to retain the ownership of his lot and negotiate a long term lease without the threat of condemnation. The appraisers for the plaintiff, in fact, refused to consider that the subject property had an economic rent potential in excess of the $75.00 monthly rent being paid at the time of their appraisal, notwithstanding the uncontradicted testimony of disinterested witnesses *332 experienced in independent service station operation that had this particular property been available for a long term lease the rental value, in the absence of the municipal street project and the threat of condemnation for the expressway, was as much as $150 monthly. The State's appraisers also contended the Clarke property had not been improved by the various street improvements, and ignored any possible enhancement of value of the property that might result from such improvement program. They each testified specifically that they had not taken this improvement into consideration in the making of their appraisals.
We are convinced the various construction projects in the area had a depressing effect on rentals for several years preceding this expropriation, and knowledge that the expressway was coming through the area had also had a similar effect. The unsettled conditions and actual physical obstructions caused by construction had continued until shortly before this proceeding was filed. Had defendant's property not been expropriated, we are convinced it would have been greatly enhanced by the City's street improvement program. It would have been very desirable for various types of business, not just as a filling station site, and would have commanded better rental than had been possible for the past ten (10) years.
It was the opinion of both Messrs. Sealy and Hurlbut that the Clarke property had been materially improved by all of the developments in the area. Mr. Sealy fixed a value for the Clarke property of $20,500 on the basis of other sales in the general area, but also calculated the value of the Clarke property from the income approach as being $21,400. He was of the opinion that the property would command a net ground rental of at least $125 monthly, which would return seven percent (7%) on $21,400. While the value based on the income approach was higher than that derived by use of the comparable approach, Mr. Sealy elected to use the comparable approach because of his understanding that this was the approach usually preferred by the Courts.
In his written opinion, the trial judge cited the cases of City of New Orleans v. Larroux, 203 La. 990, 14 So.2d 812 (1943) and Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541 (1954). Under the authority of these cases, the lower court was inclined to accept the estimate of all of the expert appraisers tendered by Mr. Clarke and the Highway Department and fix the just award at the average of all such estimates. While we can readily understand the perplexing position in which our esteemed brother below found himself because of his conclusion that all of the experts were well qualified and sincere in their opinions, we, nevertheless, find ourselves disagreeing with the "averaging method" employed by him. For the reasons previously outlined herein, we have concluded the rent approach adopted by plaintiff's experts was improperly utilized because the basic period for calculating such rent did not represent the true rent potential of the property. Therefore, conceding that such witnesses were sincere and well qualified, their estimates should not be considered in arriving at true market value. To employ any system whereby an average is sought from various estimates, it seems academic to us that all such estimates must be well-founded.
Our study of this record convinces us that the experts tendered by the defendant fixed a fair market value for the property expropriated; that their opinions were well-founded. The judgment appealed from is, therefore, amended so as to increase the award from $14,956.25 to the sum of $20,000, and as thus amended, the same is affirmed. Plaintiff-appellee is taxed with such costs as it is legally obligated to pay.
Amended and affirmed.