Hon. PIERRE ADOLPHE ROST,    ⎫
Hon. GEORGE ROGERS KING,    ⎬ *Associate Justices.*
Hon. THOMAS SLIDELL,    ⎭

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

### HILL et al. *v.* SPANGENBERG.

The domicil of a person is in the parish in which he has his habitual residence. C. C. 42.
The expression, "if a defendant reside alternately in different parishes," in art. 166 C. P.
does not mean the passing of a certain portion of the day in one parish, and the residue
in another, but the dwelling certain portions of the time in one parish and certain portions
in another, as in the case of winter and summer residences in different parishes.

APPEAL from the Fifth District Court of New Orleans, *Buchanan,* J.
*L. Peirce,* for the appellant, cited Digest, book 50, law 27, tit. 1, s. 1.
Merlin, Domicile, ss. 2, 7. *Cole* v. *Lucas,* 2 An. 946. Code of Practice, 266.
*Judson* v. *Lathrop,* 1 An. 78.

*Lockett* and *Goold,* for the defendant, cited C. C. 42. C. P. 166. *Tanner*
v. *King,* 11 La. 178. Story's Conflict of Laws, ss. 46, 47.

The judgment of the court was pronounced by

SLIDELL, J. The defendant, being sued upon three acceptances, declined
the jurisdiction of the Fifth District Court of New Orleans, averring his domicil
to be in the parish of Jefferson. The validity of this exception is the sole ques-
tion presented for our consideration.

The following facts are in evidence: The defendant, for about eighteen months
previous to the institution of the suit, had been the proprietor of a large sugar
plantation in the parish of Jefferson, and of one hundred and fifty slaves em-
ployed in its cultivation; during which period he had habitually slept and break-

HILL
v.
SPANGENBERG.

fasted in a dwelling house upon the estate, and returned thither in the afternoon to dine, and pass the residue of the day. He was in the habit of coming daily, after breakfast, to the city, by the Carrollton railroad, and his mornings were engaged in the business of cotton brokerage in New Orleans, as a member of the firm of *Spangenberg & Mason*. At intervals, however, some days would be spent continuously at the plantation without visiting the city. His partner, *Mason*, lived in New Orleans. The defendant's wife and family had formerly resided at the north, and he was in the habit of spending his summer there; but, after the purchase of the plantation, he ceased to keep house in New Orleans, and furnished the dwelling house on his plantation, whither his wife and family removed from the north, and where they have since continued to live with him, except during the summer, when they went to the north. The defendant had voted, before the institution of this suit, in the parish of Jefferson. For many years before he bought the plantation, the defendant was domiciled in New Orleans, pursuing the business of a cotton broker. He is an owner of real estate in New Orleans. In three or four notarial acts of mortgage, &c., executed by him in New Orleans, shortly before the institution of this suit, he is described as living in New Orleans.

The provisions of our law more particularly pertinent to the present question are to be found in article 42 of the Civil Code, and articles 162 and 166 of the Code of Practice.

"The domicil of each citizen is in the parish wherein his principal establishment is selected. The principal establishment is that in which he makes his habitual residence. If he resides alternatelly in several places, and nearly as much in one as in another, and has not declared his intention in the manner hereafter prescribed, any one of the said places where he resides may be considered his principal establishment, at the option of the persons whose interests are thereby affected." C. C. art. 42.

"It is a general rule in civil matters that one must be sued before his own judge, that is to say, before the judge having jurisdiction over the place where he has his domicil or residence; but that rule is subject to several exceptions." C. P. art. 162.

"If a defendant reside alternately in different parishes, he must be cited in that in which he appears to have his principal establishment, or his habitual residence. If his residence in each appear to be nearly of the same nature, in such case he may be cited in either, at the choice of the plaintiff, unless he has declared, pursuant to the provision of the law, in which of those parishes he intended to have his domicil." C. P. 166.

Testing the case by these provisions of our code, we are clearly of the opinion that the exception must be maintained, that the defendant must be deemed a resident of the parish of Jefferson, and entitled to have his defence heard before the tribunal there. Not only is he the possessor and cultivator of a large estate there, which, in point of pecuniary importance, may be considered equivalent to his business operations in New Orleans, but it is there that he sleeps, takes his meals, spends two thirds of his time, has established his household, and surrounded himself with his family and the comforts of domestic life. His dwelling house there is emphatically his permanent home. Even if it had been proved that the yearly profits of his business as a cotton broker exceeded the revenues of his plantation, we should by no means consider that as outweighing the considerations we have just stated.

The plaintiff's counsel has cited the law 27 of the Digest, *ad municipalem,* as pertinent to the present controversy. Si quis negotia sua, non is colonia, sed in municipio semper agit, in illo vendit, emit, contrabit, et in eo foro, balneo, spectacalis retitue, ubi festos dies celebrat, omnibus denique municipii commodis, nullis coloniaum fruitur; ibi majis habere domicilium, quam ubi colende causa diversatur. Conceding fully the correctness of the doctrine, and its consistency with our legislation, we do not regard the case contemplated by the digest as parallel with the one at bar. The city was by no means the exclusive seat of the defendant's business; and his comforts and enjoyments were centered elsewhere. He participated in the advantages of country life, commodis coloniaum; and the cultivation of his plantation was an object of his daily supervision, and not of the mere occasional attention of a town resident.

Under the article of the Code of Practice, an option is given to the creditor under certain circumstances, in case the debtor resides alternately in different parishes. We think that there is much reason for saying, with the defendant's counsel, that residing alternately in different parishes, does not mean passing a certain portion of the day in one parish and the residue in another. It would seem rather to contemplate the case of a person dwelling certain portions of the time in one parish, and others in another, as, for example, in the case of winter and summer residences. Such persons might be said to have alternate residences. But however this may be, there is a qualification in the article confering the option upon the creditor. It is limited to those cases where the debtor's alternate residences appear to be nearly of the same nature. This cannot be said to be the case of the defendant.

The district judge appears to have considered the present case as covered by the opinion of this court in *Judson* v. *Lathrop*, 1 An. 79. But on recurring to the facts of that case, a very marked difference will be found from those presented here. *Lathrop* was held liable to the jurisdiction of New Orleans, because, although he spent the summer months in Feliciana, he passed the business season, or eight months of the year, in New Orleans, as a commission merchant. And the court refused to compel his creditor to go to another parish, where, during two thirds of the year, his person could not be found.

The descriptive words used in the notarial acts were admissible in evidence against the defendant, and a fair subject of consideration in connexion with other facts, in testing the question of evidence. But we do not consider such immaterial recitals, in contracts with third persons, as conclusive upon the party making them, in a contest with others upon a question of jurisdiction. As to the comparative weight of this evidence, it may be considered as inferior to another implied declaration of the defendant, on the subject of this domicil. The recital in the notarial act was immaterial, and may have been in reality the act of the notary, and not suggested by the defendant, nor noticed by him; but his voting in the parish of Jefferson was his own deliberate act, clearly implying a declaration that he resided in that parish, and involving a fraud upon the public, if that declaration was untrue.

If we reverse this case, and suppose that the present suit had been brought before the District Court of Jefferson, and the defendant had excepted to its jurisdiction, we think, under the facts shown, the exception would have been dismissed without the least hesitation. By parity of reasoning we feel bound to sustain it here.

It may be true that inconvenience to the mercantile community of New Orleans may arise from refusing to them the choice of their own forum, in pursu-

HILL
*v.*
SPANGENBERG.

ing debtors who reside in adjoining parishes and transact daily business here. But this inconvenience must yield to the legislative will; and, if it be an evil, must be remedied by a new expression of that will.

It is therefore decreed that the exception of domicil be sustained, and that the plaintiffs' petition be dismissed; the plaintiffspaying costs in both courts.