FIGUEROA, PLAINTIFF AND APPELLANT, v. FIGUEROA ET AL., DEFENDANTS AND APPELLEES.

APPEAL from the District Court of San Juan, Section 1, in an Action for the Partition of Hereditary Property and for Damages.

No. 1319.—Decided January 28, 1916.

PARTIES TO ACTION—JOINDER OF NEW PARTIES.—The court, on its own motion, may order that necessary parties be joined in an action, but it is not obliged to bring in, on motion of defendant and against the will of the plaintiff, new parties who are not necessary, although they may be persons who might have been sued.

ID.—WAIVER—JUDGMENT.—If a plaintiff chooses to waive any relief which would render necessary the joining of other parties and take judgment for that only to which he is entitled as against defendants already in court and as to which a complete determination can be had, the court may grant such relief without bringing in other parties.                                    o

ID.—MISJOINDER OF PARTIES—DEMURRER—APPEAL.—When a plaintiff successfully resists a demurrer for misjoinder of parties defendant, deliberately ignores facts alleged in the answer showing such misjoinder and persists in pursuing his action against the original defendants only, he cannot be heard on appeal to complain that he has been driven to a second action against the persons so excluded, and that he was not required to include them among the original defendants before judgment was entered.

ID.—ERROR INVITED.—An appellant can neither successfully attack an error which he himself has invited nor assume before the appellate tribunal an attitude inconsistent with that taken by him at the trial.

PAROL EVIDENCE—ESTOPPEL BY DEED—RECITAL.—Sections 101 of the Law of Evidence and 1186 of the Civil Code merely state the doctrine of the parol evidence rule and of estoppel by deed. A recital which does not amount to a precise affirmation of a fact does not operate an estoppel to deny the fact. An estoppel does not arise from a recital unless it is of the essence of the agreement. A recital is not always and necessarily binding in an action not founded on the contract, nor involving any rights asserted thereunder wherein the agreement is invoked, not as between the parties thereto, but by a stranger, not as a contract under which rights are asserted, but as evidence of a mere admission favorable to the claim of such third party. In determining the

effect of a recital it must be construed in connection with the whole contract. The party who pleads an estoppel must in good faith have been misled to his injury.

The facts are stated in the opinion.

*Mr. Miguel Olmedo* for the appellant.

*Mr. José E. Benedicto* for the appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

The facts and the reasons upon which the court below rested its judgment are stated by the trial judge in his opinion as follows:

"The object of this suit is the partition, adjudication and delivery of hereditary property, and recovery of damages.

"Complainant is suing in her character of heir of Manuel Figueroa Peña, who died on September 15, 1910, in Philadelphia, Pennsylvania, United States, the latter being then married to Carmen Disdier, without executing any will and leaving as sole and universal heirs his legitimate children, the complainant and Jacinto, América and Alcides Figueroa Disdier, and the widow in her usufructuary portion.

"The complainant alleges:

"That Manuel Figueroa Peña at the time of his death was. in possession of the following properties belonging to the ganancial society, to wit: * * *.

"That Carmen Figueroa Disdier, the widow, was appointed administratrix of the property left at the death of her said husband and that an inventory thereof having been made in the month of December, 1910, the said heirs executed in January, 1910, before the notary of this city, Adrián Agosto, a deed of partition wherein the right of each of the heirs proportionately in the inheritance was determined, although no actual distribution or adjudication to each of the heirs was made of any specific portion of said property.

"That the aforesaid property was valued in said deed, for the purposes of the distribution only, at the sum of $5,714.32, and that an undivided half having been allotted to the widow as ganancial property, which amounted to $2,692.16, each of the heirs was assigned a fourth part in the remaining half of said estate which was also undivided, or a joint-ownership amounting to $673.04.

"That in spite of the distribution the property remained undivided, *administered sometimes by said Carmen Disdier and at*

*others by any one of the defendants*, but never with the consent of the complainant, except for the administration prior to the partition.

"That complainant in January, 1913, acquired from her sister América Figueroa Disdier the undivided portion belonging to the latter, together with all her rights and interests in her father's estate, and about that time gave notice of said purchase to the then administratrix of said property, Carmen Disdier Figueroa.

"That complainant has been excluded from actual possession of her aliquot portion of the inheritance as well as of the undivided portion purchased from her sister, and in no instance has she been allowed to perform any act of administration or been consulted in any manner about anything in connection with said property, and that although, according to her information, the widow Disdier is executing acts of administration, these take place in the name and in delegation of defendants Jacinto and Alcides Figueroa Disdier in order to evade responsibility upon their part.

"That no agreement, either express or implied, has been made between the complainant and defendants to have the property continue undivided, but this is due to the obstinacy of the defendants who have been requested to make the actual distribution and delivery to the complainant of her undivided portions, they never having made any reply to her demands.

"That the sum of $2,200 should be collated in the property of the inheritance, which amount was deposited by the predecessor in title in favor of defendants about the month of August, 1910.

"That among the hereditary property there also should be included the bakery oven which was excluded from the inventory and is valued at $800.

"That the rents from the estate amount to $110, or a total sum of $3,960, from January, 1911, from which an eighth part for two years, or $330, belongs to her, and a fourth part for one year, or $330, equal to a total sum of $660, as rents for the aforesaid three years that the properties have been undivided, of which total, after deducting $168 received on account of the rents, there remains $520 as capital not collated.

"And the complainant prays for judgment against the defendants as follows:

"1st. To collate in the inheritance of her father, Manuel Figueroa Peña, the sum of $2,200, received by defendants in cash or its equivalent.

"2nd. To include in the inventory the item of $800, value of the oven.

"3rd. To deliver to complainant the two undivided portions belonging to her in the property of the inheritance and to pay her the sum of $1,200 and interest as property not collated and rents unpaid, or such part of said sum as may be shown from a liquidation, plus fees of attorney and costs.

"The defendants alleged in their answer:

"They admit the capacity and character alleged by complainant in bringing this action, the intestate death of the predecessor in title and the declaration of heirship in favor of the widow and her children, the recital of the aforesaid property with exception of that part referring to the 20 boards, 4 oven shovels, 2 pails for the oven, 2 for the liquids, 1 closet for the liquids, a filter, duster, boards, scales, etc., alleged that were bought by the defendants after death of Manuel Figueroa for the sum of two hundred dollars.

"The defendants admit the allegation of the complaint relative to the appointment of Carmen Disdier as administratrix of the property of her deceased husband.

"They admit that the deed of distribution of property was executed, but allege that by mutual agreement of all interested parties the property of the estate remains undivided.

"They further allege that no extrajudicial distribution was ever accorded; that the said property has always been administered by the widow of the author, Carmen Disdier, not by delegation of defendants, but in her own right, alleging to that effect her appointment as judicial administratrix, which has not been revoked by the court or by the parties interested in the inheritance; that the defendants never have taken any part in the administration of the property, and all interested parties in the property of the estate have accepted, at least in an implied manner, the administration of said Carmen Disdier.

"The defendants admit the purchase made by the complainant from her sister América of the undivided portion of the latter, and the notice thereof to the administratrix, Carmen Disdier.

"They admit that they were requested to make a formal deed of partition and allege that they have always been and still are ready to carry it into effect; but that complainant has done nothing practical to that effect.

"They deny that Manuel Figueroa had ever withdrawn any funds from a bank where they were deposited in his name to de-

posit them in the name of defendants, and that the oven for bread (which as alleged was counted) had been omitted from the property of the estate and that it was inventoried as part of the property (the bakery) of which it is a part and to which it is annexed.

"They deny the allegation of the complaint with reference to the rents and in lieu thereof they allege that these are less; that complainant delivered to Carmen Disdier a daughter to be supported and taken care of, having left with her the rents from said property for the support of her child, and also that said C. Disdier has delivered to her various sums as rents.

"The defendants conclude by praying the court to dismiss the complaint as to the collation of the property and that the properties held in common be sold at public auction and the proceeds distributed among all the heirs, with costs, expenses and fees against the complainant.

"The case having been set for trial, this took place on November 6, 1914, the parties and their respective attorneys having appeared; both parties introduced their evidence, documentary and oral, and the case was submitted on briefs which were duly filed.

"We have carefully examined the questions raised.

"From the prayers made by complainant, we exclude, of course, the first, or that relating to the collation of the $2,200, inasmuch as no proof has been shown as to the delivery of said amount to the defendants by the father, nor the deposit made by the latter of said sum in any bank in favor of them.

"We shall not consider the second prayer, to wit, that the oven valued at $800 be included in the inventory and that this sum be distributed among the interested parties.

"In the inventory as well as in the deed of partition a description was given of 'a house fit for the bakery business,' specifying its dependencies. We think that in the word *bakery* is included the oven, and even admitting that in the value of the bakery was not included that of the oven, this would cause no harm to the complainant inasmuch as she has an undivided portion in the property of a fourth part and, whatever the price may be, her share thereof always will be one not depending on the value that might be given to same but on her right as shown by the deed of partition and the purchase of interests and rights from her sister América.

"The defendants agree as to the distribution of the estate.

"The only question to be decided is that relating to the payment of rents not satisfied.

"To that end we must ascertain whether the defendants have possessed and enjoyed the hereditary property.

"The complainant herself does not aver in her sixth allegation of the complaint that the defendants are administering the property. She is uncertain in the statement of the facts, saying that the property continued undivided, *administered at times by the said Carmen Disdier, spouse of the author of the estate, under her original appointment as judicial administratrix made by the San Juan District Court and at other times by one or the other of the said defendants Jacinto and Alcides Figueroa.*

"Carmen Figueroa herself, upon being examined as a witness and in reply to questions of the attorney for the defendants testifies:

"Before the deed of partition, who was administering? My mother was appointed administratrix by the court, but as soon as I saw she had transferred the property to my brothers I did not consider her as administratrix.

"This is all the evidence adduced to show that defendants are administering the property, from which we cannot reach a definite conclusion in favor of the complainant.

"Upon the other hand, and aside from the allegation of complainant to the effect that Carmen Disdier has been administering subsequently to the deed of partition executed in January, 1911, her statement that she does not consider her as administratrix is in conflict with the oral testimony of the defendants, from which we quote the following part as appears from the examination of Jacinto Figueroa.

"Who made the liquidation? My mother.

"Who continued in the administration after the liquidation? My mother, of course.

"Did anybody protest of that administration? No, sir.

"Did everyone receive his share from the proceeds of the property? All.

"Was your mother ever requested by any one of the interested parties to give up the administration of the property? Not to my knowledge.

"And in addition to these emphatic denials in opposition to the uncertain and weak allegations and evasive answers of the complainant, the following document appears from the record, which was admitted in evidence, to wit:

"'Received from Carmen Disdier, widow of Figueroa, the sum of sixteen dollars on account of the rents due me by reason of my

share in the estate of my father for the month of May.  Carmen Figueroa. Santurce, May 30, 1913.  For $16.'

"It appears that this document is dated May 30, 1913, that is, it is of later date than the month of January, 1911, when the deed of partition was executed and is evidence that defendants were not administering the property, but the mother, Carmen Disdier.

"She was appointed judicial administratrix by the court, and 'apparently contrary to law (*por corruptela*) and after the partition continued to administer the estate as shown by the evidence, her appointment as such administratrix never having been revoked, and the administration never having been formally closed (*dada por finiquita*).'

"Carmen Disdier is not a party to this suit.  And how could defendants be adjudged to pay any rents from property not shown to be enjoyed by them in usufruct?

"The fact that the complainant was not consulted as to leases and other acts of administration is of no importance.  An administrator, according to section 43 of the Law of Special Proceedings, is authorized to enter into agreements of lease of manufacturing establishments the annual rent of which does not exceed, as in the case of the bakery herein, one thousand dollars.

"It would be very difficult in cases of property belonging to several heirs to obtain the consent of said heirs for the acts of the administrator.

"The property being under the administration of Carmen Disdier, who is not a party to this suit, a judgment cannot properly be rendered against the defendants for rents unpaid, and therefore it is unnecessary to determine the amount thereof.

"For the foregoing reasons the court dismisses the complaint as to the collation of the $2,200, the inclusion in the inventory of the oven and the distribution thereof among the interested parties and the payments of the rents claimed; and sustains said complaint as to the delivery of the two undivided portions, without special imposition of costs.  The secretary will enter a judgment accordingly. San Juan, P. R., January 8, 1915.  Signed.  Félix Córdova Dávila, District Judge, First Section."

Plaintiff appeals "from that part of the judgment  *  *. * which denies to plaintiff the right to the sum of five hundred dollars ($500) which as income from her undivided interest in the estate of her father was due and owing to her in Jan-

uary, 1914, and which she demands from the defendants, or such sum as an accounting made might show to be due from defendants to plaintiff at the time when such judgment as should be rendered is to be satisfied.''

Errors are assigned as follows:

''I. The court erred in holding in effect, after the trial of the case, without a prior allegation of the defendant, or without action *sua sponte* by the court during the hearing of the cause, that there was a defect of parties defendant with respect to the action for the recovery of the unsatisfied rents.

''II. The court erred in weighing the evidence in not giving full scope and probative value to the document containing the final accounts of the judicial administration (Exhibit E, Rec. p. 49) ; as well as to the notice given by the attorney for the administratrix to the complainant that the *judicial administration had terminated.*

''III. The court erred in holding that the liability of one heir co-administrator, who is sued for the acts of his associate, in which he has cooperated or connived, is not several as between them.

''IV. The court erred in weighing the evidence in holding that the fact that defendants, appellees, signed an *agreement of lease* (Exhibit C, Rec. p. 45) in their capacity of owners of the property is not an act of administration and dominion by which they are bound to render an account of the rents to the coparcener who has been excluded.

''V. The court erred in weighing the evidence and holding that the receipt given by complainant, appellant (Rec. p. 63) to Carmen Disdier for $16 on account of her rents when the latter was no longer judicial administratrix, confers upon said Carmen Disdier any capacity or character of any kind.

''VI. The court erred in not granting to plaintiff-appellant the rents claimed in the prayer of the complaint.

''VII. The court erred in not ordering a 'liquidation,' it appearing from the evidence that during a period (1911 and part of 1912) no rents were paid to complainant-appellant; that the payments or credits made were accepted with the proper reservation and did not cover the sum owed; that no account was ever rendered, and that a prayer was made for judgment of $500 for rents unpaid, or the sum that might appear to be due to the complainant after a liquidation.''

As to the first of the alleged errors so specified, the argument of appellant is that, as a result of the judgment appealed from, plaintiff is driven to a new action against the actual collector of the rents; that thus she is forced to litigate in two actions what could as well be determined in one; that the former administratrix, having conveyed her interest to defendants herein, is now insolvent, and, in any event, if she as defendant in such new suit should show that, although she collected the rents, the same had in fact passed into the hands of defendants herein, already relieved of all responsibility by the judgment now under consideration, then plaintiff would be left wholly without remedy; that the defect of parties defendant is a matter of defense and should have been set up by defendants either by way of demurrer or motion or answer; that a suit of this sort should not be tried piecemeal, and that before entering judgment herein the court should have taken action under section 74 of the Code of Civil Procedure, which provides, among other things, that:

"* * * when a complete determination of the controversy cannot be had without the presence of other parties, the court must then order them to be brought in, and thereupon the party, directed by the court, must cause to be served a copy of the summons in the action and the order aforesaid, in like manner as provided for the service of the summons, upon each of the parties ordered to be brought in, who shall have ten days or such time as the court may order, after service, in which to appear and plead; and in case such party fail to appear and plead within the time aforesaid, the court may cause his default to be entered and proceed as in other cases of default, or make such other order as the condition of the action and justice shall require; * * *."

Eliminating the suggestion as to the insolvency of Carmen Disdier and the idle speculation as to what the evidence might or might not tend to disclose in a new suit if brought, we might feel strongly inclined to sustain appellant upon this point if the premise as to failure upon part of the defendants to raise such question below were well grounded in fact and

if plaintiff herself were not responsible more than anyone
else for the unfortunate position in which she now finds
herself.

But in the first place, as pointed out by the trial judge
and as shown by the record, the complaint itself leaves much
to be desired in its vague averment as to the actual adminis-
tration of the estate. Plaintiff's sixth allegation referred to
in the opinion above set forth reads as follows:

"And the said complainant alleges that notwithstanding the par-
tition agreed upon with reference to said property of the estate, as
aforesaid, and that the same is perfectly divisible, the said property
has continued, and still continues, undivided; administered at times
by the said Carmen Disdier, spouse of the author of the estate, under
her original appointment as judicial administratrix, made by the
San Juan District Court prior to the said instrument of partition,
and at other times by one or the other of the said defendants Jacinto
and Alcides Figueroa Disdier, but never with the consent of said
complainant except for the administration of the said property prior
to said partition; the said complainant having been excluded, there-
fore, not only from actual possession of her proportional share in
the estate but also from the undivided portion by her acquired from
her sister América Figueroa Disdier, but that in no instance has
she been allowed to execute any act of administration, nor has she
been consulted as to the leases of the property or expenses incurred
thereon, nor has any account been rendered her of the administra-
tion of said property from the date of the execution of the deed.
And the complainant alleges, through information and belief, that
although the widow of said Manuel Figueroa still performs acts
of administration over the property, these take place in the name
and by delegation of said defendants Jacinto and Alcides Figueroa
to evade responsibility on their part, inasmuch as the widow assigned
and transferred her undivided portion of one-half in said property,
shortly after signing the deed of partition, about January, 1911, in
favor of said defendants or of only one of them, the said Jacinto
Figueroa Disdier."

Defendants promptly demurred to the complaint, speci-
fying, among other grounds, the following:

"2nd. That the complaint is ambiguous, unintelligible or uncertain  *   *   *.

"This demurrer *is based on the fact that it is stated in the sixth allegation of the complaint that the properties* that once belonged to the estate of Manuel Figueroa *were administered by his widow Carmen Disdier without giving the complainant any participation in the administration;* and that it is stated in paragraph tenth of said complaint that complainant received the sum of $168 out of the rents and proceeds of said property, which involves a marked contradiction.

"3rd. That there is a defect of parties defendant  *   *   *.

"This demurrer is based on the ground that *it being alleged in the complaint that the property was and still is administered by Carmen Disdier,* she is the person who must be responsible for acts · done in said administration, and not the defendants.

"4th. That the complaint does not state facts sufficient to show a cause of action—paragraph sixth of section 105 of the Law of Civil Procedure.

"This demurrer is based on the ground that it is stated in paragraph 9 of the complaint that the author of the estate, Manuel Figueroa, deposited a certain sum in the bank where he was accustomed to make his deposits in favor of the defendants Jacinto and Alcides Figueroa, without making any mention of the bank where the deposit was made, which was an indispensable requisite for the defendants to get the proper information and prepare their answer so far as that matter of the complaint is concerned.

"Moreover, the defendants are required in said complaint to render an account of the administration and to deliver the rents and proceeds, *and it is alleged therein that they have not been nor are they now the administrators of said property of the estate, but that it has been administered and at present is administered by C. Disdier;* and although it is true that in the sixth paragraph it is stated that said Carmen Disdier administered at times in the name of any one of the defendants, this presupposes the existence of an express or implied agency; but even so, the defendants, that is the agents, would not be responsible but the complainant would be exclusively liable for the administration.

"For the above reasons, and as to these matters, the complaint does not state facts sufficient to constitute a cause of action against the defendants."

Just why plaintiff not only elected to omit the name of Carmen Disdier as a party defendant at the time of filing the complaint, but so tenaciously adhered to an apparently unalterable purpose to exclude her from the litigation at any cost, even after demurrer filed, instead of acquiescing therein and improving such opportunity to cure by amendment this defect of parties so squarely forced upon her attention, does not clearly appear.

Whatever merit there may or may not be in the second and fourth specifications, it is difficult to conceive why the trial court should have overruled the third ground of demurrer, *supra,* unless it proceeded upon the quite obvious theory that, Carmen Disdier being at most a proper rather than an absolutely necessary party defendant, it was not incumbent upon the court to oblige plaintiff against her will to proceed against her mother, whose presence was in nowise indispensable to a complete determination of the controversy as between the parties already before the court and the nonjoinder of whom could hardly operate to the prejudice of defendants but only to the possible future inconvenience of such recalcitrant plaintiff.

"The court may, on its own motion, order in the necessary parties; but will not, on motion of defendant and against the will of plaintiff, bring in other parties unless their presence is necessary. If a court on the trial makes an order that certain persons be permitted to appear and answer, on the erroneous supposition that they are necessary parties, such persons are not interveners, and do not become parties to the action. And if the plaintiff chooses to waive any relief which would render the presence of other parties necessary, and take judgment for that only to which he is entitled as against defendants already in court, and as to which a complete determination can be had, the court may award the latter relief without the addition of other parties. The phrase "when a complete determination,' etc., means that there are persons not parties whose rights must be ascertained and settled before the rights of the parties to the suit can be determined. 1 Sutherland, Code Pleading, Practice and Forms, Sec. 692."

Moreover, after the demurrer for defect of parties defendant had been overruled, defendants again emphasized this feature of the case by a specific averment, following a denial of the sixth allegation of the complaint, to the effect that "the parties never agreed upon a partition of the property of the estate, and the same has continued undivided by agreement of the interested parties. That the said property has been administered always by the widow of the author of the estate, Carmen Disdier, not by delegation of the defendants but in her own right and under her appointment as judicial administratrix which has never been revoked either by the court or by the parties interested in the estate. That the defendants have never taken part in said administration nor sought to elude the responsibility of their acts, as is alleged in the complaint. That all the interested parties in the estate have admitted, at least in an implied manner, the administration of Carmen Disdier, who has frequently consulted the complainant as to the leases and other acts of administration, the proper account of the administration having also been rendered her. That if the complainant has been excluded from the possession it has not been by the wish of the defendants, but for the legal and physical impossibility of possessing an undivided piece of property."

And this plain warning as to the probable result in the event of sufficient proof in this regard seems also to have fallen upon deaf ears. Again, after the hearing, when plaintiff moved to amend the complaint to conform to the evidence adduced, the amendment proposed did not even then suggest new parties or a further hearing.

Plaintiff having successfully opposed the demurrer for defects of parties defendant, having deliberately ignored the positive averment just quoted and having stubbornly persisted throughout the whole proceeding in the pursuit of her action against the original defendants alone, in wanton disregard of the treble caution contained in the two defensive pleadings above-mentioned and in the testimony for the de-

fense along the same lines, cannot now be heard to complain that she is driven to a second action through the alleged omission of the district court *sua sponte* and before entering judgment to compel her in the face of her manifest reluctance to include among such original defendants the said Carmen Disdier so repeatedly pointed out to plaintiff by said defendants as a very proper though not an absolutely necessary party defendant.

That appellant can neither successfully attack an error which she has herself invited nor assume before the appellate tribunal an attitude inconsistent with that taken by her at the trial, is a proposition too elementary to justify extended discussion. See 2 R. C. L. page 79, section 55, page 183, section 156, page 238, section 198; 3 C. J., page 718, section 618.

In discussing the second assignment of error appellant attacks the statement of the court that the former judicial administratrix "apparently contrary to law (*por corruptela*) and after the partition continued to administer the estate as shown by the evidence, her appointment as such administratrix never having been revoked and the administration never having been formally closed (*dada por finiquita*)," and undertakes at some length to show that after the filing of the final accounts of such administratrix and notice given through her attorney of the cessation of her administration she can no longer be regarded as an administratrix, *de facto* or otherwise, and that if she is not an administratrix she becomes a mere agent or attorney in fact for whose acts defendants as principals are responsible.

We do not deem it necessary to discuss the argument of appellant in this regard in detail. It may be conceded for the purposes of this opinion that there are perhaps a number of distinctions that might be drawn between a judicial administrator and a mere agent or attorney in fact, but we are wholly at a loss to perceive, and appellant has not pointed out with any marked degree of precision, how under the facts

in this case she has been seriously prejudiced in any sub-
stantial right by such confusion as may have existed in the
mind of the trial judge upon this particular point.

It is true the trial judge in the course of his opinion re-
marks *arguendo* that "an administrator, according to section
43 of the law of special proceedings, is authorized to enter
into agreements of lease of manufacturing establishments the
annual rental of which does not exceed, as in the case of the
bakery herein, one thousand dollars." And it may be that
the court below erred in so far as it was inclined to regard
Carmen Disdier as in any sense a judicial administratrix
after the filing of her final accounts and the notice given of
cessation. Indeed, appellees practically concede as much in
their brief. But we do not deem it necessary to determine
this question at this time.

The decision of the case in the district court clearly turned
upon the finding of the trial judge in accordance with the
testimony for the defense that defendants had never at any
time, either as principals, co-administrators or otherwise,
in fact participated in the actual general management, ad-
ministration or control of the property belonging to the
estate, nor received, handled or enjoyed any of the rents
sought to be recovered by plaintiff, but, upon the contrary,
that the former administratrix, Carmen Disdier, after and
notwithstanding the filing of her final accounts, execution of
the so-called partition, notice given of the cessation of her
administration and conveyance of her interest to her sons,
had in fact continued to exercise the sole, absolute and exclu-
sive management and control of such property, paying the
taxes, meeting all current expenses, collecting the rents and
making whatever payments were made both to defendants
and the plaintiff herein.

From such a viewpoint of the evidence, Carmen Disdier
not being a party to this suit, the judgment rendered was
inevitable, the point raised under the second assignment be-

comes a mere moot question and the error, if it be an error, would seem to be harmless.

And here also the opinion of the court seems merely to follow and adopt plaintiff's original theory as to the pseudo judicial character of the actual administration in full harmony with the sixth allegation of the complaint *supra* to the effect that the property of the estate, notwithstanding the agreement for partition and its divisible character, was as yet undivided and "administered at times by the said Carmen Disdier, (surviving) spouse of the author of the estate, *under her original appointment as judicial administratrix,* made by the San Juan District Court prior to the said instrument of partition and at other times by one or the other of the said defendants * * *." Thus, again, the error, if any, may fairly be said to have been invited by plaintiff in her original pleading, not to mention the evidence and her acquiescent attitude toward the same during the trial, and she cannot now consistently complain of the natural result to which by her own conduct she has so largely contributed.

The proposition stated under the third assignment simply sets up a man of straw. Appellant lays much stress upon the latter portion of the sixth averment of the complaint, above set forth in full, as charging connivance, but seems to forget that such connivance, like any other fact, must be proven as well as alleged. The court below did not hold, as charged by appellant, but rather found from all the evidence, as we have already stated, that defendants were not co-administrators with Carmen Disdier, that to all practical intents and purposes they had not participated at all in the actual administration of the estate. There being no basis in the record for the premise involved and plaintiff not having made any objection whatsoever to any of the evidence introduced, an exhaustive analysis of plaintiff's discussion of this point would serve no useful purpose. In so far as it involves the theory of a paradoxical *de facto* judicial administration, attributed by appellant to the court below, it

has been disposed of in our consideration of the second assignment. In so far as the contention as to a several liability growing out of the action of defendants in executing jointly with the said Carmen Disdier the agreement of lease mentioned in the fourth assignment is concerned, and in the total absence of any objection made or exception saved, as aforesaid, it must stand or fall with the proposition stated under that assignment, which points to the only foundation in the record upon which any error in this regard. could be predicated.

The question raised under the fourth assignment is somewhat more serious. The agreement of lease therein referred to is indeed, from plaintiff's point of view, the very nub of the whole case, and that the.execution of such instrument by defendants is a most significant circumstance, worthy of careful consideration in the light of plaintiff's theory of the case and·in connection with all the other evidence adduced, cannot be denied. Moreover, there is a certain atmosphere pervading the entire controversy that does not tend to inspire absolute confidence in the testimony of the defendants and suggests a strong suspicion that plaintiff perhaps has good reason to complain of the treatment she has received, notwithstanding her failure to make out a case. Yet both defendants took the stand and testified at length and in detail, without objection upon the part of plaintiff, as to the actual administration of the estate by the mother, Carmen Disdier, and as to the extent of their participation therein, and plaintiff wholly failed to exercise the privilege thus extended of a rigid cross-examination in this regard. Just why she rejected the opportunity so thrust upon her to demand full explanation of the conflict between the facts as indicated by the agreement of lease executed by defendants, according to her interpretation thereof, and the facts as testified to by them, is another of the several speculative features of the case which must be left as it is found, shrouded in mystery.

And here again the court did not hold, as charged by

appellant, that the execution of an agreement of lease by defendants as alleged owners of a certain property is not an act of administration and of ownership involving an obligation to account for the rents to an excluded heir or coparcener, but simply found upon all the evidence, ·including the lease and notwithstanding the execution thereof by defendants as joint lessors with Carmen Disdier, that the said Carmen Disdier was in fact exercising the sole and exclusive management and control of the property belonging to the estate.

Plaintiff's whole case is, as we have already intimated, built upon this agreement of lease by the aid of presumptions, deductions and theories which, however strong, logical and sound in the abstract, or, as applied to this particular detail, isolated and considered alone, cannot possibly survive in the face of the testimony for the defense, if true, and which the trial judge clearly accepted as true. Plaintiff's whole argument, in so far as any solid basis therefor can be found in the record, might as well have rested upon a single assignment, to wit, that the trial court erred in grounding its decision upon the facts as testified to by the witnesses for the defense, corroborated to a certain extent by the admissions in the complaint, the testimony for plaintiff and the receipt signed by her and introduced in evidence by defendants, instead of blindly following the course suggested by the agreement of lease together with the natural presumptions and logical deductions flowing therefrom, in the light of certain other more or less suspicious circumstances and in utter disregard of all the other evidence adduced.

Much emphasis is placed upon section 1186 of the Civil Code to the effect that:

"Public instruments are evidence, even against a third person, of the fact which gave rise to their execution and of the date of the latter.

"They shall also be evidence against the contracting parties and their legal representatives with regard to declarations the former may have made therein."

Both of the provisions quoted, in so far as applicable to the facts herein, may be summed up in the simple self-evident statement that the agreement of lease executed by defendants is evidence against the world of the fact of such lease, and particularly and *prima facie,* but not conclusively in point of ultimate facts, as against such defendants, that they are as they therein represented themselves to be "the owners and, as such, the administrators" of the particular property so leased by them. Whatever the force and effect of such instrument as evidence against the defendants herein might be in a suit brought to enforce or for breach of the same or its terms and conditions, yet the question of the probative value and persuasive force of its recitals as establishing the ultimate fact mentioned therein, considered merely as a single item in the whole mass of evidence in an action involving no rights asserted thereunder, when the agreement is invoked not as between the parties thereto but by a stranger, not as a contract under which rights are averred but as evidence of a mere admission favorable to the claim of such third party,—the question as to whether such admission, made under circumstances eliminative of the doctrine of estoppel, is conclusive or may be rebutted and controlled by other proper evidence,—and the question of the degree of proof necessary to overcome such solemn admission and the principles by which a trial court should be guided in weighing such contradictory evidence and determining the ultimate fact,—are quite another matter. IV Wigmore, sections 2425, 2446, 2470, 1058, 1060; *Dudley* v. *Niswander & Co.,* 64 S. E. 745.

Defendants do not deny the execution of this contract and even mention certain other isolated acts of an administrative character, but it does not necessarily and inevitably follow from such single transaction, with reference to one particular piece of property, that defendants were actually administering the estate or that they actually collected and received the rents accruing under such lease, or that the circumstances

surrounding the execution thereof may not be considered, in so far as they may serve as an aid ·in determining the true significance, relative importance and comparative probative value of the same.

Given the status of the property in question at the time of such lease, it would seem most natural that a prospective lessee should refuse to accept an instrument executed by the widow alone and should insist· upon the signature of the heirs themselves in addition to that of the *de facto* administratrix. One of the defendants states that he signed simply because he was told that his signature was necessary. It is to be regretted that more light is not shed upon this point, but, as we have already pointed out, plaintiff made no objection to this statement or to any other testimony as to actual administration, and did not choose upon cross-examination to pursue the line of inquiry thus suggested.

The agreement of lease does not state that the lessors named therein are joint administrators of the estate, but simply recites that they are the "owners and, *as such,* administrators of" the bakery, subject-matter thereof, and further, forthwith expressly and specifically sets forth that "their undivided interests in the house described and in the lot upon which it stands are derived by Carmen Disdier and her children, Jacinto N., América and Alcides R. Figueroa, from the partition of property left at the decease of Manuel Figueroa Peña as shown by instrument of February 11, 1911, before the notary Adrián Agosto."

Thus the previous statement as to ownership and consequent administration is clearly qualified and the exact nature and extent of such ownership and consequent administration is, by express reference to the source of title, plainly indicated. It follows ·that the language of the lease upon which plaintiff so strongly relies must be construed in the light of its context and of the facts as they appear from the deed of partition to which such direct and specific reference is made.

But appellant dwells at length upon the great danger of

admitting testimony to contradict the solemn statement of facts contained in a public instrument and cites in this connection subdivisions 2 and 3 of section 101 of the Law of Evidence establishing as conclusive presumptions the following:

"2. The truth of the facts recited, from the recital in a written instrument between the parties thereto or their successors in interest by a subsequent title; but this rule does not apply to the recital of a consideration.

"3. Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it."

The section quoted, like the section from the Civil Code, *supra,* merely states the familiar principle of the parol evidence rule and of estoppel by deed, and appellant entirely overlooks the express and elementary limitation as to parties and their privies and the hornbook principle that a recital which does not amount to a precise affirmation of a fact does not operate an estoppel to deny the fact; that an estoppel does not arise from a recital unless it is of the essence of the agreement; that a recital is not always and necessarily binding in an action not founded on the contract nor brought to enforce any right growing out of same or in which the subject-matter of the instrument is not under consideration; that in determining the effect of a recital it must be construed in connection with the whole contract and that the party who pleads an estoppel must in good faith have been misled to his injury. 8 Manresa (1907), 464 *et seq.;* 16 Cyc. 671 *et seq.;* IV Wigmore, sec. 2400 *et seq.; Schultz* v. *Ryan* (131 La.) 59 So. 21; *Stockhouse* v. *Zunts,* 23 La. Ann. 481; *Blake* v. *Hall,* 19 La. Ann. 49; *Davis* v. *Binion,* 5 La. 248; *Hill* v. *Spangenberg,* 4 La. Ann. 553; *Layman* v. *Vicnair,* 47 La. Ann. 679; *Succession of Bellande,* 41 La. Ann.

491; *Westholz* v. *Retaud,* 18 La. Ann. 285; *Tillman* v. *Mosely,* 14 La. Ann. 710.

We might very well have eliminated the whole of appellant's contention in this regard by application of the general rule that an appellate court will not consider questions not properly raised in the lower court, but appellant has argued the matter so earnestly and at such length and has indulged in such bitter criticism of the trial court that we have felt constrained to discuss the question as presented in so far as necessary to show that the proposition, as applied to the facts in this case, is wholly untenable.

The other errors assigned go merely to the weight and sufficiency of the evidence and to discuss them in detail would extend this opinion to inordinate length.

Upon a careful review of the whole record we cannot say that the court committed any manifest error in arriving at its decision upon the merits of the case as made, and the judgment must be

*Affirmed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.